# 22-14058-CC

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ISAC SCHWARZBAUM,

Defendant-Appellant

———————————

ON APPEAL FROM THE JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

———————————

BRIEF FOR THE APPELLEE

———————————

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

FRANCESCA UGOLINI        (202) 514-3361
BRUCE R. ELLISEN         (202) 514-2929
CLINT A. CARPENTER       (202) 514-4346
  *Attorneys*
  *Tax Division*

*Of Counsel:*                *Department of Justice*
MARKENZY LAPOINTE            *Post Office Box 502*
  *United States Attorney*     *Washington, D.C. 20044*

*USA v. Isac Schwarzbaum*
**(11th Cir. – No. 22-14058-CC)**

**C-1 of 1**

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and

Eleventh Circuit Rule 26.1-1, counsel for the United States of America

hereby certify that, to the best of their knowledge, information, and

belief, the following persons and entities omitted from the certificate

contained in the brief for the appellant have an interest in the outcome

of this appeal:

Ellisen, Bruce R., *appellate counsel for United States of America*

Hubbert, David A., *Deputy Assistant Attorney General, Tax*

*Division, U.S. Department of Justice, counsel for United*

*States of America*

Lapointe, Markenzy, *United States Attorney, counsel for United*

*States of America*

Ugolini, Francesca, *appellate counsel for United States of America*

No publicly traded company or corporation has an interest in the

outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Although most of the issues that the appellant has raised in this second appeal were heard and rejected by this Court in his prior appeal, *United States v. Schwarzbaum (Schwarzbaum I)*, 24 F.4th 1355 (11th Cir. 2022), oral argument may be helpful with respect to the Eighth Amendment issue, which is an issue of first impression in this Court.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and Corporate Disclosure

Statement ....................................................................... C-1

Statement regarding oral argument........................................... i

Table of contents................................................................. ii

Table of citations ................................................................ v

Statement of jurisdiction..................................................... xv

Statement of the issues ........................................................ 1

Statement of the case .......................................................... 1

    (i)    Course of proceedings and disposition in the court below ..... 1

    (ii)   Statement of the facts ............................................. 6

        1.    FBAR penalties generally.................................. 6

        2.    Schwarzbaum's FBAR violations ................................... 9

        3.    The IRS's timely assessment of willful FBAR

            penalties against Schwarzbaum in mistakenly

            miscalculated amounts ................................. 10

        4.    Judicial proceedings...................................... 11

    (iii)  Statement of the standard or scope of review...................... 12

Summary of argument .......................................................... 13

**Page**

Argument:

I.   Schwarzbaum's non-constitutional challenges to the judgment below rest on baseless premises that this Court already rejected in *Schwarzbaum I* ............................................................. 18

     A.   Schwarzbaum's argument that the judgment should be reversed because it requires him to pay too *little* is unserious .................................................................................. 20

     B.   Schwarzbaum is not entitled to relitigate his rejected argument that the IRS would be time-barred from recalculating his penalties on remand ................................. 24

     C.   The district court properly retained jurisdiction, and Schwarzbaum waived any argument to the contrary by not raising it in *Schwarzbaum I* ............................................ 30

II.  Schwarzbaum's Eighth Amendment challenge is unavailing because the penalties assessed against him are neither "fines" nor "excessive" .................................................................................. 36

**Page**

A.    The First Circuit correctly held in *Toth* that civil FBAR

penalties are not "fines" subject to the Eighth

Amendment, and this Court should hold likewise ............... 37

B.    Even if the Eighth Amendment applied, Schwarzbaum's

willful FBAR penalties are not unconstitutionally

"excessive" ................................................................................ 51

Conclusion ................................................................................. 61

Certificate of compliance ......................................................... 62

# TABLE OF CITATIONS

**Cases:**                                                               **Page(s)**

*Alexander v. United States,*

    509 U.S. 544 (1993) ................................................................ 37, 43, 50

*Austin v. United States,*

    509 U.S. 602 (1993) ....................................................................... *passim*

*Bittner v. United States,*

    143 S. Ct. 713 (2023) ............................................................................ 8

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engineers,*

    781 F.3d 1271 (11th Cir. 2015) ..................................................... 35, 36

*Brafman v. United States,*

    384 F.2d 863 (5th Cir. 1967) ........................................................ 27, 28

*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,*

    492 U.S. 257 (1989) ............................................................................ 37

*Cigar Assoc. of Am. v. U.S. Food & Drug Admin.,*

    964 F.3d 56 (D.C. Cir. 2020) ............................................................. 13

*Collins v. SEC,*

    736 F.3d 521 (D.C. Cir. 2013) ........................................................... 54

**Cases (continued):** **Page(s)**

*Crawford v. U.S. Dep't of the Treas.*, No. 3:15-cv-250,

    2015 WL 5697552 (S.D. Ohio Sept. 29, 2015) ............................... 53, 54

*Crystal Entm't & Filmworks, Inc. v. Jurado,*

    643 F.3d 1313 (11th Cir. 2011) ........................................................... 12

*Druid Hills Civic Ass'n, Inc. v. Fed. Highway Admin.,*

    833 F.2d 1545 (11th Cir. 1987) ........................................................... 33

*Fla. Dep't of Lab. and Emp. Sec. v. U.S. Dep't of Lab.,*

    893 F.2d 1319 (11th Cir. 1990) ........................................................... 27

*Garner v. U.S. Dep't of Labor,*

    221 F.3d 822 (5th Cir. 2000) ............................................................... 48

*Helvering v. Mitchell,*

    303 U.S. 391 (1938) ............................................................... 40, 47, 49

*Hudson v. United States,*

    522 U.S. 93 (1997) ............................................................................... 46

*Kelly v. U.S. EPA,*

    203 F.3d 519 (7th Cir. 2000) ............................................................... 55

*Kitt v. United States,*

    277 F.3d 1330 (Fed. Cir. 2002) ........................................................... 49

**Cases (continued):** **Page(s)**

*Kroner v. Commissioner,*

48 F.4th 1272 (11th Cir. 2022) ........................................... 29

*Landa v. United States,*

153 Fed. Cl. 585 (2021) .................................................. 39, 45

*Litman v. Mass. Mut. Life Ins. Co.,*

825 F.2d 1506 (11th Cir. 1987) ........................................... 26

*Little v. Commissioner,*

106 F.3d 1445 (9th Cir. 1997) .......................................... 49, 50

*Long v. Commissioner,*

772 F.3d 670 (11th Cir. 2014) ............................................. 13

*Louis v. Commissioner,*

170 F.3d 1232 (9th Cir. 1999) .......................................... 49, 50

*Martin v. Atl. Coast Line R. Co.,*

289 F.2d 414 (5th Cir. 1961) ............................................... 32

*McNichols v. Commissioner,*

13 F.3d 432 (1st Cir. 1993) ................................................. 49

*One Lot Emerald Cut Stones & One Ring v. United States,*

409 U.S. 232 (1972) ........................................................ 45

## Cases (continued): Page(s)

*Pharaon v. Bd. of Governors of Fed. Rsrv. Sys.,*

    135 F.3d 148 (D.C. Cir. 1998) ............................................................. 55

*Powers v. United States,*

    996 F.2d 1121 (11th Cir. 1993) ............................................................. 13

*Qwest Corp. v. Minn. Pub. Utils. Comm'n,*

    427 F.3d 1061 (8th Cir. 2005) ............................................................. 55

*Schiavo ex rel. Schindler v. Schiavo,*

    403 F.3d 1289 (11th Cir. 2005) ............................................................. 26

*Taylor v. Heckler,*

    778 F.2d 674 (11th Cir. 1985) ............................................................. 33

*This That And The Other Gift And Tobacco, Inc. v. Cobb Cnty., Ga.,*

    439 F.3d 1275 (11th Cir. 2006) ............................................................. 26

*Thomas v. Commissioner,*

    62 F.3d 97 (4th Cir. 1995) ............................................................. 49, 50

*Timbs v. Indiana,*

    139 S. Ct. 682 (2019) ............................................................. 38, 43, 50

*United States v. $132,245.00 in U.S. Currency,*

    764 F.3d 1055 (9th Cir. 2014) ............................................................. 51, 54

**Cases (continued):**                                            **Page(s)**

*United States v. $134,750 U.S. Currency*,

    535 F. App'x 232 (4th Cir. 2013) ......................................... 54

*United States v. Bajakajian*,

    524 U.S. 321 (1998) ..................................................... *passim*

*United States v. Bussell*,

    699 F. App'x 695 (9th Cir. 2017) .................................... 52, 59

*United States v. Chaplin's, Inc.*,

    646 F.3d 846 (11th Cir. 2011) .................................. 51, 54, 55

*United States v. Cheeseman*,

    600 F.3d 270 (3d Cir. 2010) ............................................... 51

*United States v. Collins*, No. CV 18-1069,

    2021 WL 456962 (W.D. Pa. Feb. 8, 2021) .................... 39, 45

*United States v. Escobar-Urrego*,

    110 F.3d 1556 (11th Cir. 1997) .......................................... 32

*United States v. Estate of Schoenfeld*,

    344 F. Supp. 3d 1354 (M.D. Fla. 2018) ......................... 45, 53

*United States v. Garrity*, No. 3:15-CV-243(MPS),

    2019 WL 1004584 (D. Conn. Feb. 28, 2019) ...................... 52

## Cases (continued):                                                    Page(s)

*United States v. Green,*

    457 F. Supp. 3d 1262 (S.D. Fla. 2020)...........................................45, 55

*United States v. Halper,*

    490 U.S. 435 (1989) ........................................................................46

*United States v. Horowitz,*

    978 F.3d 80 (4th Cir. 2020) ..........................................................29, 30

*United States* v. *Jalaram, Inc.,*

    599 F.3d 347 (4th Cir. 2010) ...............................................................43

*United States v. Mackby,*

    339 F.3d 1013 (9th Cir. 2003) .............................................................55

*United States v. Miga*, No. 19-cv-1015,

    2021 WL 8016223 (N.D. Tex. May 27, 2021) ......................................39

*United States v. Nat'l Dairy Prods. Corp.,*

    372 U.S. 29 (1963) ............................................................................54

*United States v. One Parcel Prop. Located at 427 & 429 Hall St.,*

    74 F.3d 1165 (11th Cir. 1996).............................................................42

*United States v. Schroeder,*

    900 F.2d 1144 (7th Cir. 1990).............................................................29

**Cases (continued):**                                    **Page(s)**

\*      *United States v. Schwarzbaum (Schwarzbaum I),*

       24 F.4th 1355 (11th Cir. 2022) ..................................... *passim*

       *United States v. Sperrazza,*

       804 F.3d 1113 (11th Cir. 2015).........................................55

\*      *United States v. Toth,*

       33 F.4th 1 (1st Cir. 2022)........................................... *passim*

       *United States v. Viloski,*

       814 F.3d 104 (2d Cir. 2016) ...............................................51

       *United States v. Ward,*

       448 U.S. 242 (1980)...........................................................47

       *Vt. Agency of Nat. Res. v. United States ex rel. Stevens,*

       529 U.S. 765 (2000)...........................................................48

       *In re Waczewski,*

       241 F. App'x 647 (11th Cir. 2007) ......................................32

       *In re Wyly,*

       552 B.R. 338 (Bankr. N.D. Tex. 2016)...............................49

       *Yates v. Pinellas Hematology & Oncology, P.A.,*

       21 F.4th 1288 (11th Cir. 2021) ...................... 13, 48, 51, 56, 59

**Cases (continued):** **Page(s)**

*Zhou Hua Zhu v. U.S. Att'y Gen.*,

703 F.3d 1303 (11th Cir. 2013) ..............................................27

**Statutes:**

Internal Revenue Code (26 U.S.C.):

§§ 6201–03, 6213–6215, 6303, 6501–6503 ...........................29

§ 6203 .......................................................................................28

§ 6213 .......................................................................................29

§ 6663(a) ...................................................................................49

31 U.S.C.:

§ 3521 .......................................................................................28

§ 5311 ..........................................................................................6

§ 5314 .......................................................................................40

§ 5314(a) .....................................................................................7

§ 5321(a) .....................................................................................8

§ 5321(a)(5) ..............................................................39, 43, 47

§ 5321(a)(5)(A) ...........................................................................7

§ 5321(a)(5)(B) ...........................................................................7

§ 5321(a)(5)(C) ....................................................10, 53, 54, 60

**Statutes (continued):**                                      **Page(s)**

31 U.S.C. (continued):

§ 5321(a)(5)(C)(i) ................................................................ 7, 57

§ 5321(a)(5)(D)(ii) ......................................................... 7, 10, 57

§ 5321(b)(1) ............................................................... 3, 8, 24

§ 5321(b)(2) ................................................................ 11, 31

§ 5321(b)(2)(A) .................................................................. 9

§ 5321(d) ...................................................................... 60

§ 5322(a) ................................................................... 47, 60

§ 5322(b) ...................................................................... 60

Administrative Procedure Act, 5 U.S.C.:

§ 551 *et seq*................................................................ *passim*

§ 703.......................................................................... 34

American Jobs Creation Act of 2004,

Pub. L. No. 108-357, § 821, 118 Stat. 1418......................................... 8

Bank Secrecy Act,

Pub. L. No. 91-508, 84 Stat. 1114 (1970) ....................... 1, 6, 44, 57, 58

False Claims Act, 31 U.S.C. § 3729 et seq........................................ 48, 56

**Other Authorities:**                                    **Page(s)**

31 C.F.R.:

§ 1010.306(c) .......................................................... 7

§ 1010.350(a) .......................................................... 7

§ 1010.810(g) .......................................................... 8

87 Fed. Reg. 3433, 3433–34 & n.1 (Jan. 24, 2022) .................................... 8

*Credit Suisse's Role in U.S. Tax Evasion Schemes: A*

*Democratic Staff Investigation* 37 (Mar. 29, 2023),

https://www.finance.senate.gov/download/sfc-credit-

suisse-report-final-32923 .............................................. 58, 59

H.R. Rep. No. 91-975 (1970),

*reprinted in* 1970 U.S.C.C.A.N. 4394 ...................................... 6, 44, 58

S. Rep. No. 108-192 (2003) ........................................................ 58

U.S. Const. amend. V ...................................................... 40, 46

U.S. Const. amend. VIII ................................................ *passim*

# STATEMENT OF JURISDICTION

This is an action to recover civil monetary penalties that the Internal Revenue Service timely assessed against Isac Schwarzbaum for willfully violating his statutory duty to report his ownership of multiple foreign bank accounts on timely filed Reports of Foreign Bank and Financial Accounts ("FBARs").  (Doc. 1.)[1]  The United States commenced this action by filing a complaint in the United States District Court for the Southern District of Florida on August 27, 2018.  (*Id.*)  The district court had jurisdiction under 28 U.S.C. §§ 1331, 1345, and 1355.

Following a remand from this Court in *United States v. Schwarzbaum (Schwarzbaum I)*, 24 F.4th 1355 (11th Cir. 2022), the district court entered a "Final Judgment After Remand" in favor of the United States on November 1, 2022.  (Doc. 162.)  That judgment was final, disposing of all claims of all parties.  Schwarzbaum timely filed a notice of appeal on December 2, 2022 (Doc. 164).  Fed. R. App. P. 4(a)(4)(B).  This Court has jurisdiction under 28 U.S.C. § 1291.

---

[1] "Doc." references are to the documents contained in the record on appeal, as numbered by the clerk of the district court.

## STATEMENT OF THE ISSUES

1.    Whether the district court properly entered judgment on the Government's claims for enforcement of Schwarzbaum's willful FBAR penalties following the IRS's recalculation of those penalties on remand in accordance with this Court's mandate in *Schwarzbaum I.*

2.    Whether the FBAR penalties enforced against Schwarzbaum violate the Excessive Fines Clause of the Eighth Amendment.

## STATEMENT OF THE CASE

### (i)    Course of proceedings and disposition in the court below

Under the Bank Secrecy Act, Pub. L. No. 91-508, 84 Stat. 1114 (1970), U.S. persons who have foreign bank accounts are generally required to disclose those accounts to the Government by filing an annual Report of Foreign Bank and Financial Accounts ("FBAR"), and they are subject to enhanced civil monetary penalties for "willful" noncompliance.[2]  The United States brought this action to recover

---

[2] For simplicity, our brief generally refers to the statutory and regulatory reporting requirements as the "FBAR requirements" or "FBAR obligations," to violations of those requirements as "FBAR violations," and to the penalties for such violations as "FBAR penalties."

-2-

FBAR penalties that the IRS timely assessed against Isac Schwarzbaum for willfully violating his statutory duty to report his foreign bank accounts in each of the years 2006–2009.  The penalty for 2006, however, is no longer at issue, leaving only the penalties for 2007–2009 in dispute.

In a prior appeal, this Court rejected Schwarzbaum's protests of innocent reliance on the advice of his CPAs and affirmed the district court's finding that Schwarzbaum's violations for the years 2007–2009 were, in fact, willful.  *United States v. Schwarzbaum (Schwarzbaum I)*, 24 F.4th 1355, 1362–63 & n.8 (11th Cir. 2022).  But because the IRS had partly based its determination of the amounts of the assessed penalties on a miscalculation of the statutory maximum penalties, the Court held under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq*., that the penalties must be remanded to the IRS for recalculation.  *Id.* at 1365–67.

In doing so, this Court expressly rejected Schwarzbaum's argument that "the IRS would be time-barred on remand from recalculating his FBAR penalties" and that, because remand would thus be "futile," the Court "should instead direct a judgment in his favor."

-3-

*Id.* at 1367.  Schwarzbaum had argued that an IRS recalculation of his penalties would violate the six-year statute of limitations for assessing FBAR penalties.  *Id.* (citing 31 U.S.C. § 5321(b)(1)).  But as the Court explained, he cited—and the Court was aware of—"no authority standing for the proposition that, on remand from judicial review under the APA, an agency could be time-barred from re-evaluating its original actions."  *Id.*  Noting further that "[t]here is no dispute that the IRS timely assessed Schwarzbaum's original FBAR penalties," the Court then instructed that "[t]he remand we now direct is not for the IRS to issue new penalties, but for it to recalculate the penalties it has already assessed."  *Id.*

While awaiting issuance of the mandate (which would enable the district court to effectuate the remand to the IRS), the Government moved the district court to retain jurisdiction while the IRS recalculated the penalties on remand, so that the district court could then adjudicate Schwarzbaum's liability for the recalculated penalties and enter judgment accordingly.  (Doc. 136.)  Over Schwarzbaum's objections, the district court granted the motion (Doc. 146; *see also* Doc. 159) and then,

-4-

in accordance with this Court's mandate, remanded the penalties to the IRS for recalculation (Doc. 147).

This Court had acknowledged that the IRS's recalculation of Schwarzbaum's penalties to correct the error in its original calculations would not necessarily result in lower penalties. *Schwarzbaum I*, 24 F.4th at 1366. And in fact, the penalties that the IRS recalculated on remand ended up being slightly higher than the original penalties, increasing the total penalty amount by approximately 7.7%, from $12,555,813 to $13,521,328. The administrative record setting out the explanation and details of the IRS's penalty recalculation is found in Schwarzbaum's appendix at Doc. 152, Exs. 1–3, but we will not belabor those specifics here, since Schwarzbaum does not argue in this appeal that there is any error in the recalculated penalties.

With the remand to the IRS thus completed, the Government moved the district court to enforce Schwarzbaum's penalties by entering a money judgment against him. (Doc. 152.) But while it was (and is) the Government's position that the IRS correctly recalculated the penalties, the Government decided to forgo the relatively small difference and limit its request for judgment to the slightly lower

-5-

amounts claimed in its complaint (*i.e.*, the original penalty amounts),
plus applicable interest and late-payment penalties. (*Id.* at 2–3; Doc.
158 at 3.) Schwarzbaum opposed the entry of judgment, arguing
primarily that this Court's mandate had vacated the IRS's timely
assessments of the original penalties and, since the IRS was time-
barred from making new assessments, that there were no valid penalty
assessments against him to enforce. (Doc. 155.)

Granting the Government's motion (Doc. 160) and entering
judgment accordingly (Doc. 162), the district court rejected
Schwarzbaum's argument about assessments (Doc. 160 at 2), cross-
referencing its explanation in a previous order for rejecting the same
argument when Schwarzbaum had raised it in opposition to the district
court's retention of jurisdiction:

> [A]s the Government correctly points out, the Eleventh
> Circuit vacated the Amended Judgment [that was appealed
> in *Schwarzbaum I*], but did not vacate the assessment in
> this case.
>
> In its opinion, the Eleventh Circuit made it clear that
> it was *not* vacating the assessment, as Schwarzbaum now
> argues—"[t]he remand we now direct is not for the IRS to
> issue *new* penalties, but for it to recalculate the penalties it
> has *already assessed*." As the Court noted in [a previous]
> Order, the Eleventh Circuit specifically rejected

-6-

> Schwarzbaum's argument regarding the statute of
> limitations and stated that "he cites no authority standing
> for the proposition that, on remand from judicial review
> under the APA, an agency would be time-barred from re-
> evaluating its original actions."

(Doc. 159 at 6–7 (quoting *Schwarzbaum I*, 24 F.4th at 1367) (emphasis

added by district court).)  The district court also rejected arguments

challenging the merits of the IRS's recalculation of his penalties and an

argument challenging the Government's entitlement to interest (Doc.

160 at 1–2), none of which Schwarzbaum has renewed in this appeal.

**(ii)    Statement of the facts**

**1.    FBAR penalties generally**

In the Bank Secrecy Act, Pub. L. No. 91-508, 84 Stat. 1114 (1970),

Congress confronted the "serious and widespread use," for the "purpose

of violating American law," of "foreign financial facilities located in"

jurisdictions that provide secrecy to account holders.  H.R. Rep. No. 91-

975, at 13 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4397.  To

combat such use of secret foreign accounts—and thereby combat

terrorism, tax evasion, money laundering, and other wrongdoing, *see* 31

U.S.C. § 5311—Congress required U.S. persons who have relationships

with foreign financial agencies to report those relationships to the

-7-

Government.  *See* 31 U.S.C. § 5314(a).  And those with interests in foreign financial accounts (*e.g.*, Swiss bank accounts) are required to do so by filing the Report of Foreign Bank and Financial Accounts, commonly called an "FBAR."  31 C.F.R. § 1010.350(a).

Among others, every U.S. citizen who has an interest in foreign financial accounts with an aggregate value of more than $10,000 during a calendar year must report each account, the maximum value of each account during the calendar year being reported, and other account information on a timely filed FBAR.  31 C.F.R. §§ 1010.306(c), 1010.350(a).  The deadline for filing an FBAR for each of the calendar years 2006-2009 was June 30 of the following year.  31 C.F.R. § 1010.306(c).

Congress has authorized the Secretary of the Treasury to impose "a civil money penalty on any person who violates" these reporting requirements.  31 U.S.C. § 5321(a)(5)(A).  The amount of the penalty is capped at $10,000 for non-willful violations.  *Id.* § 5321(a)(5)(B).  But for willful violations, the maximum amount of the civil penalty is "the greater of" $100,000 or 50 percent of "the balance in the [foreign] account at the time of the violation."  *Id.* § 5321(a)(5)(C)(i), (D)(ii); *see*

American Jobs Creation Act of 2004, Pub. L. No. 108-357, § 821, 118 Stat. 1418 (amending § 5321(a) to allow penalties for non-willful violations and to increase the penalties for willful violations); *see generally Bittner v. United States*, 143 S. Ct. 713, 720–22 (2023).[3]

Authority for civil enforcement of the FBAR requirements has been delegated to the IRS, including the authority to investigate possible civil violations, to assess and collect civil FBAR penalties, and to take any other actions reasonably necessary for enforcement. *See* 31 C.F.R. § 1010.810(g). Thus, for purposes of civil FBAR penalties, it is the IRS that determines whether a violation was willful and exercises the statutory discretion to determine the amount of the penalty, up to the statutory maximum.

Civil FBAR penalties are subject to two statutes of limitations. The first prohibits the IRS from assessing a civil FBAR penalty more than 6 years after "the date of the transaction with respect to which the penalty is assessed." 31 U.S.C. § 5321(b)(1). And as relevant here, the

---

[3] For violations occurring after November 2, 2015, the maximum civil penalty amounts have been periodically adjusted to account for inflation. *See* 87 Fed. Reg. 3433, 3433–34 & n.1 (Jan. 24, 2022).

-9-

second prohibits the Government from bringing a civil action to recover a timely assessed civil FBAR penalty more than 2 years after "the date the penalty was assessed."  31 U.S.C. § 5321(b)(2)(A).

### 2.    Schwarzbaum's FBAR violations

Isac Schwarzbaum was born in Germany, but he became a U.S. resident in 1995 and a U.S. citizen in 2000.  (Doc. 92 at 2–3.)  Between 2006 and 2009, Schwarzbaum held interests in eleven Swiss bank accounts and two Costa Rican bank accounts with an aggregate balance during those years that reached more than $28 million at its peak and was never less than $2 million.  (Doc. 92 at 5; Pl. Ex. 26.)  As a result, Schwarzbaum was required to file FBARs disclosing all of his foreign accounts for each of those years by June 30 of the following year.  But as relevant here, Schwarzbaum failed to file an FBAR for 2008 (until years after it was due), and the FBARs he filed for 2007 and 2009 collectively disclosed no more than three of his thirteen foreign accounts.  (Doc. 92 at 7–9.)  Accordingly, it is undisputed that Schwarzbaum violated the FBAR reporting requirements for each of the years 2007–2009.  (*Id.* at 14.)

-10-

### 3. The IRS's timely assessment of willful FBAR penalties against Schwarzbaum in mistakenly miscalculated amounts

The IRS determined that Schwarzbaum's failures to comply with his FBAR reporting obligations were willful and that a willful FBAR penalty should be imposed for each of the years 2007–2009. *Schwarzbaum I*, 24 F.4th at 1360. As to the amount of the penalties, the per-year statutory maximum penalty for each unreported account is the greater of $100,000 or 50 percent of the account balance "at the time of the violation." 31 U.S.C. § 5321(a)(5)(C), (D)(ii). But in exercising its discretion to determine an appropriate penalty within the statutory maximum, "the IRS took a wrong fork in the road by starting with the wrong numbers." *Schwarzbaum I*, 24 F.4th at 1366. Instead of calculating the statutory maximums for Schwarzbaum's penalties using the account balances "at the time of the [FBAR] violation"—*i.e.*, the annual FBAR filing deadline, which was June 30 of the year after the year being reported—the IRS mistakenly used the highest annual balance in each account. *Id.* at 1365. And as this Court later explained, that "error, it appears, flowed through [the IRS's] calculations from beginning to end." *Id.* at 1366. After administrative proceedings in

-11-

which Schwarzbaum protested the proposed penalties (but took no issue

with the IRS's calculations), the IRS timely assessed willful FBAR

penalties against Schwarzbaum in the amounts it had mistakenly

miscalculated.  (Doc. 152-5.)  *See Schwarzbaum I*, 24 F.4th at 1367.

### 4.    Judicial proceedings

When Schwarzbaum failed to pay, the United States brought this

action under 31 U.S.C. § 5321(b)(2) to reduce to judgment and recover

the timely assessed penalties.  *Schwarzbaum I*, 24 F.4th at 1361.  The

pre-*Schwarzbaum I* proceedings in the district court are convoluted and

now largely irrelevant.  After a bench trial, the district court found that

Schwarzbaum's FBAR violations for the years 2007–2009 were willful

(Doc. 92 at 18, 20–22) and, in a later order, rejected Schwarzbaum's

argument that his corresponding FBAR penalties violate the Excessive

Fines Clause of Eighth Amendment (Doc. 98 at 10–16).  But acting *sua

sponte*, the district court nevertheless set aside the penalties under the

APA because of the IRS's error in not starting its calculations with the

applicable June 30 account balances.  (Doc. 92 at 24-25, 26.)  Instead of

ordering a remand to the IRS for it to correct the error, however, the

district court entered judgment based on its own recalculation of the

-12-

amounts of the penalties.  (Doc. 105; *see* Doc. 98 at 7–10, 16; Doc. 104 at 3–6.)  *See Schwarzbaum I*, 24 F.4th at 1361–62, 1364.

On appeal, this Court affirmed both the finding of willfulness and the conclusion that the penalties were not in accordance with the FBAR penalty statute because of the IRS's calculation error.  *Schwarzbaum I*, 24 F.4th at 1358.  But as we have explained, *supra* pp. 2–3, the Court held that the appropriate remedy under the APA was a remand to the district court with instructions to remand to the IRS, "not for the IRS to issue new penalties, but for it to recalculate the penalties it has already assessed." *Schwarzbaum I*, 24 F.4th at 1367.  The Court therefore declined to reach the Eighth Amendment issues.  *Id.* at 1358 n.1, 1362. The proceedings on remand in the district court and at the IRS are summarized *supra*, pp. 3–6.

### (iii)  Statement of the standard or scope of review

The district court's conclusions of law are reviewed *de novo*, but its findings of fact are reviewed only for clear error.  *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1319 (11th Cir. 2011).  This Court reviews a district court's decision on an APA challenge to agency action *de novo*, reviewing the underlying agency action under the

-13-

standards set out in the APA. *Schwarzbaum I*, 24 F.4th at 1363–64 (citing *Cigar Assoc. of Am. v. U.S. Food & Drug Admin.*, 964 F.3d 56, 61 (D.C. Cir. 2020)). The district court's determination that civil FBAR penalties are not "fines" subject to the Eighth Amendment is a conclusion of law reviewed *de novo*. *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1306 (11th Cir. 2021); *United States v. Toth*, 33 F.4th 1, 15 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 552 (2023). The district court's judgment may be affirmed on any ground that finds support in the record. *See, e.g.*, *Long v. Commissioner*, 772 F.3d 670, 675 (11th Cir. 2014); *Powers v. United States*, 996 F.2d 1121, 1123–24 (11th Cir. 1993).

## SUMMARY OF ARGUMENT

1.    This Court's mandate in *Schwarzbaum I* could not have been clearer: "The remand we now direct is not for the IRS to issue new penalties, but for it to recalculate the penalties it has already [timely] assessed." 24 F.4th at 1367. Schwarzbaum does not (and cannot) dispute that the IRS did just that. Thus, the premises of his non-constitutional arguments—*i.e.*, that the timely assessments of his penalties were vacated and that untimely new assessments were made

-14-

on remand—is utterly baseless. Indeed, this Court already rejected Schwarzbaum's argument that "the IRS would be time-barred on remand from recalculating his FBAR penalties," finding "no authority standing for the proposition that, on remand from judicial review under the APA, an agency could be time-barred from re-evaluating its original actions." *Id.*

a.   Schwarzbaum's complaint that the judgment below requires him to pay too *little* is meritless. Contrary to his speculation, the Government decided to limit its request for judgment to the amounts claimed in its complaint—instead of pursuing the slightly higher penalty amounts that the IRS recalculated on remand—for litigation reasons having nothing to do with his already-rejected arguments about time-barred new assessments. The Government's forbearance in not pursuing every penny that Schwarzbaum owes does not entitle him to any relief from this Court.

b.   Schwarzbaum's argument that the judgment below violates the six-year statute of limitations for making FBAR penalty assessments is the very same argument that this Court expressly rejected in *Schwarzbaum I*. The "law of the case" doctrine bars

relitigation of issues that were decided either explicitly or by necessary implication in a prior appeal in the same case, precluding this Court from revisiting those issues in a subsequent appeal. And in any event, Schwarzbaum's statute-of-limitations argument remains meritless for the same reasons that this Court rejected it the first time. Giving agencies the opportunity to fix their mistakes is the very purpose of remand under the APA. But citing no apposite authority, Schwarzbaum would have this Court weaponize the APA to *prevent* the IRS from correcting its error. Adopting his view would effectively nullify the APA for every agency action that is subject to a statute of limitations, transforming judicial review into an all-or-nothing proposition in which timely agency actions would be forever barred if the agency made any mistake necessitating a remand.

c.    Schwarzbaum's challenge to the district court's retention of jurisdiction over this case during the pendency of the remand to the IRS is equally meritless. Schwarzbaum seeks to prevent his penalties from being enforced in this action because he believes the Government is time-barred from bringing a new enforcement action. But just as he (unsuccessfully) argued in his prior appeal that remand would be futile

because the IRS was time-barred from making new penalty assessments, Schwarzbaum could have also argued that remand would be futile because the district court would lack jurisdiction to enforce the recalculated penalties and any new enforcement action would be time-barred.  Having failed to do so, Schwarzbaum has waived the issue and cannot be heard to raise it in this subsequent appeal.

Moreover, even if the issue were properly raised, the district court's retention of jurisdiction was entirely appropriate.  This Court has long acknowledged that a remand to the agency does not deprive the district court of jurisdiction to enter a final judgment after the administrative proceedings on remand have concluded.  And Schwarzbaum's arguments about "remand without vacatur" are just another attempt to relitigate his position that remanding the IRS's determination of the amounts of his penalties necessarily vacated the IRS's time-limited assessments of his penalties.  No authority supports such a rule, and in any event, this Court has held that remand without vacatur is appropriate where—as here—the agency's error can be cured.  In *Schwarzbaum I*, this Court correctly rejected Schwarzbaum's bid to use the APA as a get-out-of-penalty-liability-free card, and that

rejection of his position as to the status of the penalty assessments is now the binding law of this case.

2.    As the district court correctly held, civil FBAR penalties are not "fines"—and are therefore not subject to the Excessive Fines Clause of the Eighth Amendment—because their purpose is remedial rather than punitive.  The First Circuit recently held just that in *United States v. Toth*, 33 F.4th 1, 15–19 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 552 (2023), and this Court should follow that decision.  Moreover, even if the Eighth Amendment applied, Schwarzbaum has failed to show that the penalties enforced against him are unconstitutionally "excessive."  To the contrary, each of the relevant factors weighs in favor of the conclusion that Schwarzbaum's penalties are not grossly disproportional to his willful offenses and, accordingly, are not excessive for Eighth Amendment purposes.

-18-

# ARGUMENT

# I

**Schwarzbaum's non-constitutional challenges to the judgment below rest on baseless premises that this Court already rejected in *Schwarzbaum I***

With the exception of his Eighth Amendment argument, Scharzbaum's arguments are most notable for what they do *not* say. (Br. 19–34 (parts I–III).)  They do not dispute that the IRS correctly recalculated his FBAR penalties using June 30 balances in accordance with this Court's mandate and the FBAR penalty statute.  And they do not even mention that this Court already rejected in *Schwarzbaum I* his arguments that remanding the penalties to the IRS for recalculation would vacate the timely assessments of his penalties and require the IRS to make new, time-barred penalty assessments.

Indeed, Schwarzbaum simply ignores the fact that in *Schwarzbaum I*, this Court found "no authority standing for the proposition that, on remand from judicial review under the APA, an agency could be time-barred from re-evaluating its original actions," especially "agency action that was timely in the first instance."  24 F.4th at 1367 & n.13.  Using the word "assessment" more than 140

times, Schwarzbaum's brief instead either argues, asserts, or implies on practically every page that the IRS's timely assessments of the original penalties were vacated and/or that the IRS made new, time-barred assessments when it recalculated the penalties on remand, as if this Court had not already settled those issues.

But this Court's mandate in *Schwarzbaum I* could not have been clearer: "The remand we now direct is not for the IRS to issue new penalties, but for it to recalculate the penalties it has already [timely] assessed." 24 F.4th at 1367. Schwarzbaum does not (and cannot) dispute that the IRS did just that. (*See* Doc. 152, Exs. 1–2.) Thus, the notion suffusing Schwarzbaum's brief that the timely assessments were vacated and new assessments were made on remand is utterly baseless.

As we will explain more fully, the law of the case doctrine bars Schwarzbaum from relitigating the issues he lost in *Schwarzbaum I*, and the waiver doctrine bars him from raising new issues that he could have raised in *Schwarzbaum I* but did not. Those doctrines leave very little of Schwarzbaum's non-constitutional arguments open for consideration, but we will also explain why those arguments are meritless in any event.

## A.    Schwarzbaum's argument that the judgment should be reversed because it requires him to pay too *little* is unserious

Schwarzbaum's opening gambit is a complaint that the judgment below requires him to pay the United States *less* than he owed.  (Br. 19–22.)  If Schwarzbaum wants to ask this Court to remand for the district court to increase the judgment against him to the full amount of his recalculated FBAR penalties (plus interest and failure-to-pay penalties), the Government stands ready to consent.  But the Government's forbearance in not pursuing every penny he owes does not *entitle* Schwarzbaum to any relief from this Court, much less a reversal (Br. 22) excusing him from penalty liability altogether.

Attempting to relitigate his already-rejected argument that recalculating the penalties on remand would require the IRS to make new, time-barred assessments, *see Schwarzbaum I*, 24 F.4th at 1367, Schwarzbaum speculates that the Government limited its request for judgment to the amount claimed in its complaint because of "the difficulty it faced in attempting to collect a new, higher penalty assessment issued after the expiration of the statute of limitations." (Br. 19.)  That speculation is baseless because, in accordance with this

Court's decision in *Schwarzbaum I*, 24 F.4th at 1367, the IRS on remand did not make any "new" penalty assessments, time-barred or otherwise. Again, this Court had already held that the expiration of the six-year period for assessment of FBAR penalties could not bar the IRS from recalculating Schwarzbaum's penalties on remand. *Id.* (rejecting Schwarzbaum's argument that "the IRS would be time-barred on remand from recalculating his FBAR penalties"). And the Court had explicitly instructed that "[t]he remand we now direct is not for the IRS to issue new penalties, but for it to recalculate the penalties it has already [timely] assessed." *Id.* The IRS did just that, resulting in recalculated penalties—not new assessments—that were slightly higher than the original penalties, as the Court had acknowledged might occur. *See id.* at 1366 ("That is not to say the [recalculated] penalties will be lower. We do not presume to guess what the IRS will do.").

Equally baseless are Schwarzbaum's assertions that the Government "rejected those calculations." (Br. 19, 21.) Let there be no mistake: the Government's position was and is that the IRS correctly recalculated Schwarzbaum's penalties on remand in accordance with this Court's mandate, the FBAR penalty statute, and the IRS's own

internal guidelines.  (Doc. 152 at 2; Doc. 158 at 2–3.)  Indeed, not even Schwarzbaum disputes the correctness of the IRS's recalculation, having abandoned the contrary arguments he raised below—which the Government opposed (Doc. 158 at 2–3) and the district court rejected (Doc. 160 at 1–2)—by not renewing them on appeal.

The Government simply made a litigation decision, having already litigated this case for more than four years, not to pursue the less-than-8% difference between the recalculated penalty amounts and the original amounts sought in its complaint.  (Doc. 152 at 1–3.)  That was never to say the Government was not entitled to the full amount of the recalculated penalties.  But pursuing the less-than-8% difference to judgment would have likely generated additional litigation over leave to amend the Government's complaint and the proper calculation of interest, further prolonging the resolution of this action against a defendant who has fled the country, holds all of his assets abroad, and has given no indication that he will ever voluntarily pay a judgment for *any* amount of his FBAR penalties.[4]  (*See* Doc. 115 at 3–6, 9, 13, Exs. B,

---

[4] In ongoing post-judgment enforcement proceedings, the district court recently ordered Schwarzbaum to repatriate assets sufficient to

(continued…)

E–F; Doc. 169 at 3–4, 7, Ex. B.)  The Government opted to forgo the relatively small difference (and the further litigation that pursuing it would have entailed) by asking the district court for a judgment for the amount requested in the complaint, rather than for the greater amount of the recalculated penalties.  (Doc. 152 at 2–3; Doc. 158 at 3.)

Schwarzbaum identifies no authority that requires the United States, as a plaintiff in enforcement litigation, to pursue a money judgment for the full amount of an assessed FBAR penalty in all circumstances and at any cost.  Unlike in *Schwarzbaum I*, the judgment here does not reflect any attempt to correct an agency error that should have instead been remanded under the APA.  Again, it is undisputed that there is no error in the IRS's recalculation of Schwarzbaum's FBAR penalties.

No authority prohibits the Government from forgoing part of a correctly determined penalty—*to the penalized person's benefit*—in the interest of litigation expediency or for any other reason.  Here, the Government properly could have sought a judgment against

---

satisfy the judgment into a U.S. bank account by April 28, 2023.  (Doc. 176 at 9.)  As of the filing of this brief, he has yet to comply.

Schwarzbaum for the full amount of the correctly recalculated penalties but elected not to. Although Schwarzbaum is free to look that gift horse in the mouth, it does not entitle him to any relief from this Court.

### B. Schwarzbaum is not entitled to relitigate his rejected argument that the IRS would be time-barred from recalculating his penalties on remand

Bringing his efforts to relitigate his statute of limitations argument from the background to the foreground, Schwarzbaum next argues (Br. 22–30) that the judgment below violates the six-year statute of limitations for making FBAR penalty assessments, 31 U.S.C. § 5321(b)(1), because, according to him, the IRS could not recalculate his penalties without making new, time-barred penalty assessments. That is the very same argument that this Court expressly rejected in *Schwarzbaum I*, finding "no authority standing for the proposition that, on remand from judicial review under the APA, an agency could be time-barred from re-evaluating its original actions," especially where, as the Court found here, the agency action "was timely in the first instance." 24 F.4th at 1367 & n.13. Schwarzbaum contends (Br. 27, 29) that "no valid [penalty] assessment" exists because the vacatur of the district court's amended judgment in *Schwarzbaum I* somehow also

vacated the IRS's timely assessment of his original FBAR penalties. But this Court rejected that argument, too, when it instructed that "[t]he remand we now direct is not for the IRS to issue new penalties, but for it to recalculate the penalties it has already assessed." *Id.* at 1367.

Schwarzbaum knows this Court has already rejected these arguments. Both the district court and the Government pointed it out to him repeatedly when he tried to relitigate the same arguments in the post-remand proceedings below. (Doc. 144 at 1–2; Doc. 146 at 4; Doc. 150 at 2, 4–5; Doc. 158 at 1–2; Doc. 159 at 6–7; Doc. 160 at 2.) But now before this Court a second time, he continues to ignore this Court's ruling in *Schwarzbaum I*, even going so far as to make the incredible claim that "*[t]here is no dispute* that Mr. Schwarzbaum's original FBAR penalty assessments were vacated, rendering them null and void." (Br. 29 (emphasis added).)

Schwarzbaum is not entitled to a "do over" of arguments this Court has already rejected. The "law of the case" doctrine bars relitigation of issues that were decided either explicitly or by necessary implication in a prior appeal in the same case, precluding this Court

from revisiting those issues in a subsequent appeal.  *See, e.g.*, *This That And The Other Gift And Tobacco, Inc. v. Cobb Cnty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006) (citing cases); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1291 (11th Cir. 2005) (per curiam) (same).

This Court's rejection of his arguments in *Schwarzbaum I*, 24 F.4th at 1367, is the law of this case and bars him from now relitigating those arguments.  Although "[t]here are a few discrete exceptions to the law of the case doctrine," *Schiavo*, 403 F.3d at 1292, Schwarzbaum does not even acknowledge that this Court already rejected his arguments, much less argue that an exception allows him to relitigate them nonetheless.  "As this Court sitting en banc has explained, 'Failure to honor [the] commands [of the law of the case doctrine] can only result in chaos.'"  *Id.* (alterations in original) (quoting *Litman v. Mass. Mut. Life Ins. Co.*, 825 F.2d 1506, 1511 (11th Cir. 1987) (en banc)).  Accordingly, the Court need not and should not revisit the merits of Schwarzbaum's already-rejected arguments.

If the Court were to revisit those issues, however, it would find that Schwarzbaum's arguments have not improved with age.  Indeed, he still "cites no authority standing for the proposition that, on remand

from judicial review under the APA, an agency could be time-barred from re-evaluating its original actions." *Schwarzbaum I*, 24 F.4th at 1367.  He still relies primarily (Br. 29–30) on *Brafman v. United States*, 384 F.2d 863 (5th Cir. 1967), which this Court recognized "did not address when, if ever, an agency would be time-barred on remand from re-evaluating agency action that was timely in the first instance." *Schwarzbaum I*, 24 F.4th at 1367 n.13.  And he continues to treat the APA's requirement of remand to the agency, which is designed to protect agency discretion, as a convenient "gotcha" to escape liability altogether.

As this Court recognized in *Schwarzbaum I*, "[r]emand is the appropriate remedy when an administrative agency makes an error of law, *for it affords the agency an opportunity to receive and examine the evidence in light of the correct legal principle*." *Id.* at 1365 (emphasis added) (quoting *Zhou Hua Zhu v. U.S. Att'y Gen.*, 703 F.3d 1303, 1315 (11th Cir. 2013)).  Thus, "[i]f the agency has misapplied the law . . . . the case must be remanded to the agency *to make a new determination*." *Id.* at 1365–66 (emphasis added) (quoting *Fla. Dep't of Lab. and Emp. Sec. v. U.S. Dep't of Lab.*, 893 F.2d 1319, 1322 (11th Cir. 1990)).  In other

-28-

words, giving agencies the opportunity to fix their mistakes is the very purpose of remand under the APA.

Schwarzbaum would have this Court weaponize the APA to *prevent* the IRS from correcting its error. Adopting his view would effectively nullify the APA for every agency action that is subject to a statute of limitations, transforming judicial review into an all-or-nothing proposition in which timely agency actions would be forever barred if the agency made any mistake necessitating a remand. It is therefore unsurprising that he is unable to cite even a single case in which a court has held that a statute of limitations could thwart a remand to the agency under the APA.

Schwarzbaum's reliance on cases involving *tax* assessments (Br. 24–25, 29–30) continues to be misplaced. Assessments of taxes under 26 U.S.C. § 6203, unlike assessments of FBAR penalties under 31 U.S.C. § 3521, are not reviewed under the APA and are never remanded to the IRS. Indeed, that is why none of those cases, including *Brafman*, "address[es] when, if ever, an agency would be time-barred on remand from re-evaluating agency action that was timely in the first instance." *Schwarzbaum I*, 24 F.4th at 1367 n.13. Judicial review of tax

-29-

assessments is *de novo*—if the IRS erred in determining the amount of the taxpayer's liability, the court must determine the correct amount itself. *See, e.g.*, *United States v. Schroeder*, 900 F.2d 1144, 1148 (7th Cir. 1990) ("When a court is faced with an incorrect but otherwise valid assessment, the proper course is not to void the assessment, as did the district court, but to determine what, if anything, the taxpayer owes the government."). Moreover, taxpayers may seek judicial review of the IRS's determination of some types of tax liabilities *before* they are formally assessed by petitioning the Tax Court for a *de novo* "redetermination" of the liability. *See* 26 U.S.C. § 6213. The IRS's "assessment" of a tax is a ministerial action and only an intermediate step in a complex statutory tax-collection scheme. 26 U.S.C. §§ 6201–03, 6213–6215, 6303, 6501–6503; *see, e.g.*, *Kroner v. Commissioner*, 48 F.4th 1272, 1274–75 (11th Cir. 2022). In short, FBAR penalty assessments and tax assessments are apples and oranges.

Equally unavailing is Schwarzbaum's reliance (Br. 28–29) on *United States v. Horowitz*, 978 F.3d 80 (4th Cir. 2020). There, the Fourth Circuit described a question raised by the appellants as "whether the [IRS] withdrew its timely 2014 assessment and reinstated

it in 2016, which would then be untimely." *Id.* at 91–92.  It is unclear in

context whether the court was agreeing that the assessment would have

been untimely in that circumstance or was just restating the appellants'

argument that it would have been untimely.  But in any event, the

court held that the IRS's actions "did not have the *legal* effect of

reversing the assessments," and "[a]ccordingly, the civil penalties

against the Horowitzes were timely assessed." *Id.* at 93.  The remand of

Schwarzbaum's penalties to the IRS for recalculation likewise did not

reverse the timely assessment of his penalties, as this Court has

already held.  *Schwarzbaum I*, 24 F.4th at 1367.

## C.    The district court properly retained jurisdiction, and Schwarzbaum waived any argument to the contrary by not raising it in *Schwarzbaum I*

Hedging his bets in case this Court (again) rejects his argument

that the IRS was time-barred from recalculating his penalties on

remand, Schwarzbaum also challenges the district court's retention of

jurisdiction over this case during the pendency of the remand to the

IRS.  (Br. 30–34.)  But this is just more procedural gamesmanship

resting on premises the Court has already rejected.  Schwarzbaum's

unspoken game here is to escape liability for his willful FBAR violations

by preventing the district court from enforcing the recalculated penalties in this action and then, if the Government brings a new enforcement action, invoking the two-year statute of limitations on actions to recover FBAR penalties, 31 U.S.C. § 5321(b)(2), to claim that the new action is time-barred.  (This is implicit in his argument because Schwarzbaum would have no reason to contest the district court's retention of jurisdiction to enforce the penalties if he did not believe the Government would be time-barred from bringing a new enforcement action.)  Thus, Schwarzbaum's retention-of-jurisdiction argument is ultimately an argument that the remand to the IRS was futile because the penalties that the IRS recalculated on remand are unenforceable.

The time for Schwarzbaum to make that argument, however, was *before* this Court held that remand would *not* be futile in *Schwarzbaum I*, 24 F.4th at 1367.  The law of the case doctrine bars Schwarzbaum from relitigating the issue of futility.[5]  And in any event, he waived his retention-of-jurisdiction argument by not raising it in *Schwarzbaum I*.

_____

[5] Indeed, his retention-of-jurisdiction argument rests largely on the same premise as his new-assessments argument—namely, that remanding to the IRS somehow vacated the timely assessments of his

(continued…)

Just as he (unsuccessfully) argued in his prior appeal that remand would be futile because the IRS was time-barred from making new penalty assessments, 24 F.4th at 1367, Schwarzbaum could have also argued that remand would be futile because the district court would lack jurisdiction to enforce the recalculated penalties and any new enforcement action would be time-barred. This Court has consistently applied the waiver doctrine to hold that an appellant has waived any issue or argument that the appellant could have raised in a prior appeal in the same case but did not. *See, e.g.*, *In re Waczewski*, 241 F. App'x 647, 651 n.7 (11th Cir. 2007); *United States v. Escobar-Urrego*, 110 F.3d 1556, 1561 n.5 (11th Cir. 1997); *Martin v. Atl. Coast Line R. Co.*, 289 F.2d 414, 416 (5th Cir. 1961). Thus, having failed to raise his retention-of-jurisdiction argument in his first appeal, Schwarzbaum has waived the argument and cannot be heard to raise it in this subsequent appeal.

In any case, Schwarzbaum identifies no sound basis to hold that the district court's retention of jurisdiction was improper. He asserts that "the district court's work was done" after it carried out this Court's

---

original penalties. (Br. 31–32.) As we have explained, this Court rejected that premise in *Schwarzbaum I*, 24 F.4th at 1367.

mandate to remand to the IRS (Br. 30), but that is not so.  Remanding

to the IRS "for it to recalculate the penalties it has already assessed,"

*Schwarzbaum I*, 24 F.4th at 1367, did not resolve the Government's

claims to reduce those assessments of willful FBAR penalties to

judgment (Doc. 1 at 12–18)—it merely delayed the resolution of those

claims while the IRS recalculated the amounts.  In other words, there

remained an outstanding question, not about *whether* Schwarzbaum

must pay, but about *how much* he must pay.

In those circumstances, the district court's retention of jurisdiction

over the case during the remand to the IRS was entirely appropriate.

As the district court recognized (Doc. 146 at 2–4), this Court has long

acknowledged that an agency remand order is not a final judgment and

does not deprive the district court of jurisdiction to enter a final

judgment after the administrative proceedings on remand have

concluded.  *See Druid Hills Civic Ass'n, Inc. v. Fed. Highway Admin.*,

833 F.2d 1545, 1548–49 (11th Cir. 1987) (citing *Taylor v. Heckler*, 778

F.2d 674, 677 & n.2 (11th Cir. 1985)).  It may be that district courts are

not often called upon to exercise that jurisdiction.  In most actions

challenging agency action under the APA, the challenger is the plaintiff,

not the defendant, and a remand to the agency finally resolves the challenger's claim.  The circumstances in an action to enforce civil monetary penalties, such as this one, are different.  Although the APA generally allows agency action to be challenged in civil enforcement proceedings, 5 U.S.C. § 703, the challenger in that circumstance is the defendant, not the plaintiff, and a remand to the agency for further proceedings does not necessarily resolve the Government's enforcement claim for a money judgment—as this Court illustrated when it remanded Schwarzbaum's penalties to the IRS for recalculation while rejecting his claim for a judgment in his favor.  *Schwarzbaum I*, 24 F.4th at 1367.

Schwarzbaum's arguments about "remand without vacatur" (Br. 31–34) are just another attempt to relitigate his position that the IRS's assessment of a penalty for a willful FBAR violation is inseparable from the IRS's determination of the amount of the penalty. No authority holds that that an *assessment* of a penalty must be vacated when a court remands for a redetermination of the *amount* of the penalty.  Indeed, such a rule would do violence to the purpose of agency remand under the APA by *preventing* the IRS from correcting its

-35-

mistakes, as we have explained.  This Court correctly rejected

Schwarzbaum's bid to use the APA as a get-out-of-penalty-liability-free

card, and that rejection of his position on vacatur of the assessments is

now the binding law of this case.  *Schwarzbaum I*, 24 F.4th at 1367

("The remand we now direct is not for the IRS to issue new penalties,

but for it to recalculate the penalties it has already assessed.").

Moreover, even if the remand that this Court ordered in

*Schwarzbaum I* could fairly be viewed as a "remand without vacatur,"

there was nothing improper about it.  Citing *Black Warrior Riverkeeper,*

*Inc. v. U.S. Army Corps of Engineers*, 781 F.3d 1271 (11th Cir. 2015),

Schwarzbaum asserts that "[v]acatur, unquestionably, is the ordinary

APA remedy and was required in this case."  (Br. 31.)  But *Black*

*Warrior* says no such thing.  Rather, the Court held that "[t]he decision

whether to vacate agency action falls within our broad equitable

discretion," noting its "sister circuits that have considered this question

have concluded that remand without vacatur is permitted under the

APA."  *Id.* at 1290.

What's more, this Court also recognized in *Black Warrior* that

"where it is not at all clear that the agency's error incurably tainted the

agency's decisionmaking process, the remedy of remand without vacatur is surely appropriate."  781 F.3d at 1290.  Here, the Court concluded that the IRS's error—using account balances other than the applicable June 30 balances to compute the penalties—was *not* an incurable taint.  Thus, the district court's retention of jurisdiction pending the IRS proceedings on remand was "surely appropriate," whether or not the remand was a remand without vacatur.  *Id.*

## II

### Schwarzbaum's Eighth Amendment challenge is unavailing because the penalties assessed against him are neither "fines" nor "excessive"

The Eighth Amendment prohibits "excessive fines," but "fines" include only payments made "as punishment for some offense."  *United States v. Bajakajian*, 524 U.S. 321, 327–28 (1998) (citation and quotation marks omitted).  Moreover, a fine violates the Excessive Fines Clause only if it is "grossly disproportional to the gravity of a defendant's offense."  *Id.* at 334.  Contrary to Schwarzbaum's

arguments (Br. 34–41), the civil penalties enforced against him for his willful FBAR violations are neither fines nor excessive.[6]

### A. The First Circuit correctly held in *Toth* that civil FBAR penalties are not "fines" subject to the Eighth Amendment, and this Court should hold likewise

As the district court concluded below (Doc. 98 at 10–16), civil FBAR penalties are not "fines" covered by the Eighth Amendment because they are not "punishment for an offense." *Bajakajian*, 524 U.S. at 328. "[A]t the time the Constitution was adopted, 'the word "fine" was understood to mean a payment to a sovereign as punishment for some offense.'" *Id.* at 327 (citation omitted). "Then, as now," fines were typically imposed as punishments in criminal prosecutions, not civil actions. *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989). Consistent with that history, payments imposed as sanctions for the commission of crimes are "clearly a form of monetary punishment," subject to the constraints of the Excessive Fines Clause. *Alexander v. United States*, 509 U.S. 544, 558 (1993) (criminal

---

[6] Schwarzbaum raised his Eighth Amendment arguments in *Schwarzbaum I*, but the Court declined to reach them in light of its decision to remand the penalties to the IRS. 24 F.4th at 1358 n.1, 1362.

forfeiture of property); *see Bajakajian*, 524 U.S. at 328 (criminal forfeiture of currency).  But the Supreme Court has also found the Clause applicable to some payments that a defendant is ordered to make in civil *in rem* forfeiture actions that "are at least partially punitive." *Timbs v. Indiana*, 139 S. Ct. 682, 689 (2019); *see Austin v. United States*, 509 U.S. 602, 619–22 (1993) (civil forfeiture of property used to commit drug crimes).  The form of proceeding, civil or criminal, is therefore not entirely dispositive; the question remains whether a particular payment is "punishment" for an "'offense'" against the sovereign.  *Austin*, 509 U.S. at 610, 622 (citation omitted).

Schwarzbaum challenges the district court's conclusion that civil FBAR penalties are not fines under this standard (Br. 35–38), but he neglects to mention that the First Circuit recently rejected an identical challenge in *United States v. Toth*, 33 F.4th 1, 15–19 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 552 (2023).  Although the First Circuit's decision is not binding on this Court, its reasoning is persuasive, and this Court should follow it.[7]

---

[7] Like the First Circuit, the district courts that have decided whether civil FBAR penalties are fines for Eighth Amendment purposes
(continued…)

In *Toth*, the First Circuit upheld a willful FBAR penalty of more than $2 million, which represented the statutory maximum penalty of 50% of the balance in the defendant's unreported foreign account at the time of the violation.  With respect to the Eighth Amendment, the court acknowledged that "[o]nly monetary penalties that function as 'punishment for some offense' are encompassed by the [Excessive Fines] Clause."  *Id.* at 15 (quoting *Bajakajian*, 524 U.S. at 327–28).  And the court recognized as well that "there is no per se rule that the Excessive Fines Clause only applies to criminal proceedings," and that "[w]hat matters is whether [the] penalty, even if only a civil one, 'is punishment.'"  *Id.* (quoting *Austin*, 509 U.S. at 610).

Applying those principles, the court concluded that civil penalties assessed under 31 U.S.C. § 5321(a)(5) for willful FBAR violations are not "fines" for Eighth Amendment purposes.  *Toth*, 33 F.4th at 16–19.  The court explained that, unlike the forfeitures "held to constitute

---

have unanimously held that they are not.  *Landa v. United States*, 153 Fed. Cl. 585, 601 (2021); *United States v. Miga*, No. 19-cv-1015, 2021 WL 8016223, at *2 (N.D. Tex. May 27, 2021); *United States v. Collins*, No. CV 18-1069, 2021 WL 456962, at *8 (W.D. Pa. Feb. 8, 2021), *aff'd on other grounds*, 36 F.4th 487 (3d Cir.), *cert. denied*, 143 S. Ct. 489 (2022).

'punishment' in both *Austin* and *Bajakajian*," willful FBAR penalties
are "not tied to any criminal sanction." *Id.* at 16. The court instead
viewed willful FBAR penalties as akin to civil tax penalties, which the
Supreme Court has held not to be punishment for purposes of the Fifth
Amendment's Double Jeopardy Clause and which the circuit courts
have uniformly found not to constitute fines for purposes of the
Excessive Fines Clause. *Id.* at 17 (citing, *inter alia*, *Helvering v.
Mitchell*, 303 U.S. 391 (1938)).

The First Circuit further explained that Congress authorized civil
penalties for violations of Section 5314 to remedy real harms to the
United States, in the form of lost tax revenues and increased
investigative costs, given the law-enforcement resources required to
"police the use of these accounts" when a U.S. person fails to report or
keep records of them. *Toth*, 33 F.4th at 17–18. The court noted that
the penalized account holder's "frustration of governmental efforts to
recoup what is owed" to the United States "from a foreign account is
likely to be especially effective . . . when the holder of the undisclosed
foreign account is willfully seeking to hide it." *Id.* at 18.

This Court should follow the First Circuit's decision in *Toth* because it correctly applies the principles set forth in the Supreme Court's Eighth Amendment case law to the question whether willful FBAR penalties are fines, which was a matter of first impression in the First Circuit just as it is in this Court. Indeed, the First Circuit's rationale for finding the Excessive Fines Clause inapplicable to willful FBAR penalties consisted largely of a careful comparison between the statutory scheme at issue here and the forfeitures that the Supreme Court analyzed in *Austin* and *Bajakajian*. *See Toth*, 33 F.4th at 15–19.

Like the defendant in *Toth*, Schwarzbaum principally relies (Br. 35–37) on the Supreme Court's decision in *Austin*. The First Circuit persuasively explained why willful FBAR penalties lack the punitive character of the civil forfeiture addressed in *Austin*. *See Toth*, 33 F.4th at 15–16, 18. There, the statutory scheme permitted the federal government to bring an *in rem* forfeiture action to seize vehicles or real property used or intended for use in the commission of specified drug crimes. *Austin*, 509 U.S. at 604–05 & n.1. The Government brought such an action after Austin pleaded guilty in state court to a drug-trafficking offense in which he used the premises of an auto-body shop

and a mobile home to conduct his drug sales. *Id.* at 605–06. The lower court had concluded, in conflict with another circuit, that the Excessive Fines Clause did not apply to any "*in rem* civil forfeitures," *id.* at 606, but the Supreme Court reversed, concluding that the forfeitures at issue in *Austin* "constitute[d] 'payment to a sovereign as punishment'" for the property owner's underlying drug crimes. *Id.* at 622 (citation omitted).

As the First Circuit explained in *Toth*, the *in rem* forfeiture in *Austin* was thus "tied to [a] criminal sanction." 33 F.4th at 16. The Supreme Court, in fact, emphasized in *Austin* that "Congress ha[d] chosen to tie forfeiture *directly* to the *commission* of drug offenses," by authorizing the forfeiture of property that was "used or intended for use to facilitate the transportation of controlled substances" or "the commission of . . . drug-related crime[s]." 509 U.S. at 620 (emphasis added); *see United States v. One Parcel Prop. Located at 427 & 429 Hall St.*, 74 F.3d 1165, 1169 (11th Cir. 1996) (inclusion of "innocent-owner defense" in forfeiture statute at issue in *Austin* "strongly suggests that Congress intended to punish persons intentionally involved in drug trafficking").

Indeed, all of the Supreme Court's cases applying the Excessive Fines Clause have involved either forfeitures ordered as sanctions for criminal conduct after an adjudication of guilt, *see Bajakajian*, 524 U.S. at 325–26; *Alexander*, 509 U.S. at 547–48, or civil actions brought after the property owner had already been convicted of a crime, seeking forfeiture of property used in the commission of the crime, *see Timbs*, 139 S. Ct. at 686; *Austin*, 509 U.S. at 605.  *See also United States* v. *Jalaram, Inc.*, 599 F.3d 347, 354 (4th Cir. 2010) (concluding that, in *Austin*, *Alexander*, and *Bajakajian*, the Supreme Court "consistently focused on whether the forfeiture stemmed, at least in part, from the property owner's criminal culpability").

Under 31 U.S.C. § 5321(a)(5), by contrast, the IRS may assess a civil penalty for a willful FBAR violation without regard to whether the violation constituted a crime or was tied to or otherwise facilitated some other crime, such as criminal tax evasion or money laundering.  Thus, the conditions that have led the Supreme Court to treat certain forfeitures as fines for Eighth Amendment purposes are absent here, just as they were in *Toth*.

Schwarzbaum argues that willful FBAR penalties are not solely remedial (Br. 36–38), but the First Circuit in *Toth*, 33 F.4th at 16–17, rejected that argument, persuasively explaining why willful FBAR penalties are different from the non-remedial forfeitures that the Supreme Court has treated as fines in cases like *Bajakajian*. In the Bank Secrecy Act, Congress enacted the FBAR reporting requirements that Schwarzbaum willfully violated after finding "'that hundreds of millions in tax revenues [were] lost' due to the secret use of foreign financial accounts—which Congress characterized as the 'largest single tax loophole permitted by American law.'" *Toth*, 33 F.4th at 17 (alteration in original) (quoting H.R. Rep. No. 91-975, at 12–13 (1970), *reprinted in* 1970 U.S.C.C.A.N. at 4397–98). Congress designed the civil penalty for willful FBAR violations to remedy those harms to the public fisc. *Id.*

Willful FBAR penalties also reflect the substantial law-enforcement costs associated with investigating foreign financial accounts that U.S. persons fail to report—costs that are "especially" acute in cases like this one, where the account owner "is willfully seeking to hide" the foreign account (or, in Schwarzbaum's case, many

foreign accounts).  *Id.* at 18.  And contrary to Schwarzbaum's suggestion (Br. 38), Congress may reasonably authorize the imposition of a remedial civil penalty without requiring that the penalty precisely correspond in each case to the fiscal costs of the violation, which may be difficult to quantify.  *Cf. One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 237 (1972) (likening a non-criminal customs forfeiture to a "reasonable form of liquidated damages").  Like the First Circuit in *Toth* and the district court below (Doc. 98 at 15), every other court that has addressed the issue has recognized that civil FBAR penalties are remedial rather than punitive.  *See Landa*, 153 Fed. Cl. at 599–601; *United States v. Green*, 457 F. Supp. 3d 1262, 1270–71 (S.D. Fla. 2020); *United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1369–73 (M.D. Fla. 2018); *Collins*, 2021 WL 456962, at *8–*9.  The FBAR penalty is a reasonable means through which Congress chose to recover the costs that result from the failure to report foreign bank accounts.

Although Schwarzbaum argues otherwise (Br. 35–38), civil penalties for willful FBAR violations are remedial in character, rather than punitive, even if they have a deterrent effect.  When the Supreme

-46-

Court said in *Austin* that a civil sanction that serves "deterrent purposes[ ] is punishment," 509 U.S. at 610, it was quoting *United States v. Halper*, 490 U.S. 435, 448 (1989), which had held that the Double Jeopardy Clause encompasses certain types of civil sanctions. But four years after it decided *Austin*, the Court rejected "*Halper*'s test for determining whether a particular sanction is 'punitive,'" explaining that "*all* civil penalties have some deterrent effect." *Hudson v. United States*, 522 U.S. 93, 102 (1997) (emphasis added) (citations omitted).

Moreover, that effect—putting a price on conduct that the government seeks to reduce or eliminate—is not the kind of deterrent to which *Austin* referred. Rather, in context, the Court was referring in *Austin* to sanctions with the purpose of deterring *criminality*, such as the drug-trafficking *in rem* forfeiture laws at issue in that case. *See* 509 U.S. at 622 (finding that forfeiture under those provisions "constitutes 'payment to a sovereign as punishment for some offense'"); *id.* at 627 (Scalia, J., concurring in part and concurring in the judgment) (similarly concluding that such forfeitures "are certainly *payment* (in kind) *to a sovereign* as *punishment* for an *offense*"); *cf. Hudson*, 522 U.S.

at 105 (acknowledging that "deterrence 'may serve civil as well as criminal goals'").

Here, the civil FBAR penalties authorized by 31 U.S.C. § 5321(a)(5) do not have the purpose of deterring crime. That is especially clear in this statutory scheme because Congress provided in § 5322(a) for criminal penalties—including criminal monetary penalties expressly characterized as "fine[s]"—to deter and punish certain FBAR violations. 31 U.S.C. § 5322(a); *cf. Helvering v. Mitchell*, 303 U.S. 391, 404–05 (1938) (drawing a similar inference from the presence of "two separate and distinct provisions imposing sanctions" for tax fraud, one criminal and one civil); *United States v. Ward*, 448 U.S. 242, 248–49 (1980) ("[W]here Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. In regard to this latter inquiry, 'only the clearest of proof could suffice to establish the unconstitutionality of a statute on such a ground.'" (citations omitted)). Accordingly, civil FBAR penalties, including the

willful penalties at issue here, retain their remedial character notwithstanding their deterrent effects.[8]

Adopting Schwarzbaum's reading of *Austin* would threaten to transform every civil penalty into a form of punishment for Eighth Amendment purposes, since every civil penalty presumably deters to some extent the conduct for which the penalty is assessed. Such a radical expansion of the Excessive Fines Clause has no sound basis in the original meaning of the Clause, its historical application, or any Supreme Court precedent. *Cf. Garner v. U.S. Dep't of Labor*, 221 F.3d

---

[8] Although Schwarzbaum has not cited it, we note that this Court has held that treble damages and statutory penalties under the False Claims Act (FCA), 31 U.S.C. § 3729 et seq., are fines for the purposes of the Excessive Fines Clause because the Supreme Court has said that they "'are essentially punitive in nature.'" *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1308 (11th Cir. 2021) (quoting *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784 (2000)). This Court noted, in particular, that "the FCA's statutory penalties are preset by Congress and compulsory irrespective of the magnitude of the financial injury to the United States," and emphasized that three other circuits had already "accepted that FCA monetary awards are fines." *Id.* at 1308. None of those things are true of civil FBAR penalties. As we have shown, FBAR penalties are remedial, rather than punitive, and the only circuit that has decided the issue, the First Circuit in *Toth*, held that they are not fines for purposes of the Excessive Fines Clause. 33 F.4th at 15–19.

822, 827 (5th Cir. 2000) ("That a statute serves to deter future conduct does not automatically render it punitive.").

Indeed, the notion that any deterrence constitutes punishment cannot be reconciled with the Supreme Court's decision in *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938), that civil tax penalties are remedial. The courts of appeals, following *Mitchell*, have routinely held that even very substantial civil tax penalties—such as the penalty for civil fraud, which constitutes 75 percent of the tax not paid as a result of fraud, 26 U.S.C. § 6663(a)—are not fines within the meaning of the Eighth Amendment. *See, e.g.*, *Kitt v. United States*, 277 F.3d 1330, 1337 (Fed. Cir. 2002); *Louis v. Commissioner*, 170 F.3d 1232, 1236 (9th Cir. 1999); *Little v. Commissioner*, 106 F.3d 1445, 1454–55 (9th Cir. 1997); *Thomas v. Commissioner*, 62 F.3d 97, 102–03 (4th Cir. 1995); *McNichols v. Commissioner*, 13 F.3d 432, 434–35 (1st Cir. 1993); *see also In re Wyly*, 552 B.R. 338, 609–13 (Bankr. N.D. Tex. 2016) (more than $427 million in penalties for failure to disclose foreign trusts not fines and, in any event, not excessive). And in doing so, the First, Fourth, and Ninth Circuits expressly declined to extend *Austin* to reach civil tax penalties. *McNichols*, 13 F.3d at 434 (rejecting proposed extension of *Austin* to tax

penalties as a "giant leap" the court was unwilling to make); *Thomas*, 62 F.3d at 103 ("Thomas cannot identify any portion of the Austin opinion which suggests that the Court intended for its Eighth Amendment analysis to extend beyond the civil forfeiture context."); *Little*, 106 F.3d at 1454 (finding "no compelling reason for extending the holding of *Austin*" to tax penalties for negligence and substantial understatement of tax); *see also Louis*, 170 F.3d at 1236 (distinguishing *Austin* and *Bajakajian* as to civil tax fraud penalty). Although a civil FBAR penalty is not a Title 26 "tax" penalty, it is more analogous to a nonpunitive tax penalty than to the forfeitures tied to criminality that were at issue in *Austin*, *Bajakajian*, *Alexander*, and *Timbs*.

For all these reasons, willful FBAR penalties are not "fines" within the meaning of the Eighth Amendment, as the district court correctly held below and the First Circuit correctly held in *Toth*. This Court should hold likewise and reject Schwarzbaum's argument that his willful FBAR penalties are subject to Eighth Amendment review.

**B.  Even if the Eighth Amendment applied, Schwarzbaum's willful FBAR penalties are not unconstitutionally "excessive"**

A fine violates the Excessive Fines Clause only if it is "grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334.  In addressing excessiveness challenges, this Court and other courts of appeals consider factors used by the Supreme Court in *Bajakajian*, 524 U.S. at 337–40, to determine whether a fine is grossly disproportional: the amount of the penalty authorized by Congress; the class of persons for whom the statute at issue was principally designed; the seriousness of the offense and the harm it caused; and a comparison with the potential criminal penalties, including imprisonment.  *See, e.g.*, *Yates* v. *Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1314 (11th Cir. 2021); *United States v. Chaplin's, Inc.*, 646 F.3d 846, 851 (11th Cir. 2011); *United States v. Viloski*, 814 F.3d 104, 110–11 (2d Cir. 2016); *United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1058 (9th Cir. 2014); *United States v. Cheeseman*, 600 F.3d 270, 283–84 (3d Cir. 2010).

The First Circuit did not reach the question whether the willful FBAR penalty at issue in *Toth* was "excessive" because the court

concluded that it was not a "fine" regardless.  But in *United States v. Bussell*, 699 F. App'x 695 (9th Cir. 2017), the Ninth Circuit took the opposite approach of not reaching the question whether a willful FBAR penalty was a "fine" because it held that the penalty was not "excessive" regardless.  At issue in *Bussell* was the constitutionality of an approximately $1.2 million willful FBAR penalty that represented half of the account balance—*i.e.*, the statutory maximum.  *See* Br. for the Appellee, *United States v. Bussell* (9th Cir. No. 16-55272), 2016 WL 7046939, at *8 (Dec. 2016).  Holding that the penalty was not unconstitutionally excessive, the court concluded that it was "not grossly disproportional to the harm she caused because Bussell defrauded the government and reduced public revenues." *Bussell*, 699 F. App'x at 696.

The district courts that have reached the excessiveness question have likewise upheld FBAR penalties without deciding whether the penalties are fines.[9]  For example, the court in *United States v. Garrity*,

---

[9] Schwarzbaum's assertion (Br. 37) that these cases "subjected FBAR penalties to Eighth Amendment scrutiny without any suggestion that the Eighth Amendment does not apply" is somewhat misleading, in

(continued…)

No. 3:15-CV-243(MPS), 2019 WL 1004584, at *1, *6-*9 (D. Conn. Feb. 28, 2019), held that a willful FBAR penalty of $936,691—50% of the unreported account's $1,873,382 balance—was not excessive under the Eighth Amendment.  In *United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1359, 1375 (M.D. Fla. 2018), the court likewise held that a willful FBAR penalty in the amount of "$614,300—50 percent of [an] account's $1,228,600 balance"—was not excessive.  And the court in *Crawford v. U.S. Department of the Treasury*, No. 3:15-cv-250, 2015 WL 5697552, at *16 (S.D. Ohio Sept. 29, 2015), rejected a facial challenge to the FBAR penalty, holding that "[a] maximum penalty fixed by Congress is due substantial deference from the courts" and that "the maximum penalty" in § 5321(a)(5)(C) "will be constitutional in at least some circumstances."

Applying the *Bajakajian* factors to Schwarzbaum's FBAR penalties confirms that they too are not unconstitutionally excessive. As an initial matter, acts of Congress are entitled to a strong

---

that the cases also do not contain any suggestion that the Eighth Amendment *does* apply.  Deciding that question (*i.e.*, whether the penalties were "fines") was unnecessary because the courts in those cases held that the penalties were not excessive regardless.

-54-

presumption of constitutionality, *e.g.*, *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963), and the Supreme Court emphasized in *Bajakajian* that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," 524 U.S. at 336. The courts that consider excessiveness challenges therefore give substantial deference to legislative judgments regarding the appropriate penalty. *See, e.g.*, *Chaplin's, Inc.*, 646 F.3d at 851–52; *$132,245.00 in U.S. Currency*, 764 F.3d at 1058; *United States v. $134,750 U.S. Currency*, 535 F. App'x 232, 240 (4th Cir. 2013); *Collins v. SEC*, 736 F.3d 521, 527 (D.C. Cir. 2013); *Crawford*, 2015 WL 5697552, at *16. Recognizing "the inherent difficulty of monetizing the gravity of an offense" and that judicial "proportionality analyses are 'inherently imprecise,'" this Court's "cases have therefore assigned great weight to the fines approved by Congress." *Chaplin's, Inc.*, 646 F.3d at 851–52 (quoting *Bajakajian*, 524 U.S. at 336).

Since Schwarzbaum's FBAR penalties undisputedly fall within the congressionally prescribed range, *see* 31 U.S.C. § 5321(a)(5)(C), they are presumptively constitutional. *See Chaplin's, Inc.*, 646 F.3d at 852 ("Congress, as a representative body, can distill the monetary value

-55-

society places on harmful conduct; forfeitures falling below the maximum statutory fines for a given offense therefore receive a 'strong presumption' of constitutionality."); *see also Qwest Corp. v. Minn. Pub. Utils. Comm'n*, 427 F.3d 1061, 1069 (8th Cir. 2005); *Kelly v. U.S. EPA*, 203 F.3d 519, 524 (7th Cir. 2000); *Pharaon v. Bd. of Governors of Fed. Rsrv. Sys.*, 135 F.3d 148, 157 (D.C. Cir. 1998). Schwarzbaum argues (Br. 38) that he made the Government whole merely by paying the taxes he had avoided for years by failing to report the existence of his foreign accounts. But as we have explained, the harms of secret foreign accounts and willful FBAR violations reach well beyond the tax loss.

Indeed, Congress based the willful FBAR penalty on the account balance and not the tax loss, reflecting a judgment that the harm to the Government increases with the size of the account balance, irrespective of the size of the tax loss. *Green*, 457 F. Supp. 3d at 1271; *see Chaplin's, Inc.*, 646 F.3d at 852 ("Congress . . . can distill the monetary value society places on harmful conduct"); *United States v. Sperrazza*, 804 F.3d 1113, 1128 (11th Cir. 2015) (acknowledging harm from structuring beyond direct financial loss); *United States v. Mackby*, 339 F.3d 1013, 1019 (9th Cir. 2003) (harm of false claims "extends beyond the money

paid out of the treasury").  The total size of Schwarzbaum's willful

FBAR penalties—about $13.5 million, as recalculated (of which about

$12.6 million was enforced)—is a reflection of that congressional

judgment, as it is based on the size of the balances in the multiple

foreign accounts that he willfully failed to disclose, in violation of his

statutory duty, for each of the three years at issue.  *See, e.g.*, *Yates*, 21

F.4th at 1314 (holding that statutory penalties and treble damages

under the False Claims Act were not excessive, even though "[s]eeing a

judgment of $1.179 million based on $755.54 in actual damages may

raise an eyebrow," because "whatever optics inure to [defendant's]

benefit by that comparison . . . are negated when one realizes that this

total is the result of [defendant's] repeated (214) instances of fraud

against the United States").

　　Contrary to Schwarzbaum's bare assertion (Br. 40), his penalties

do not include "an unmitigated penalty of $100,000" for "accounts with

balances of $0."  In recalculating his penalties on remand, the IRS

lacked sufficient information to determine the exact June 30 balance for

some of his unreported foreign accounts, so it took the conservative

approach of assuming that the statutory maximum penalty for those

accounts was $100,000 (*see* Doc. 152, Ex. 1 at 1.1–1.3)—*i.e.*, the lowest

possible statutory maximum.  *See* 31 U.S.C. § 5321(a)(5)(C)(i), (D)(ii)

(maximum penalty for willful violations is "the greater of" $100,000 or

50 percent of the account balance).  Although the IRS thus assumed, in

effect, that the June 30 balance in those accounts was no more than

$200,000, the IRS did not find—and Schwarzbaum cites no evidence—

that any of those accounts had a $0 balance at any relevant time.[10]  As

for mitigation of the statutory maximums, Schwarzbaum does not

dispute that the IRS correctly applied its internal mitigation guidelines,

as set out in the Internal Revenue Manual (IRM).  (*See* Doc. 152, Ex. 1

at 1.4–1.8.)

Further, Schwarzbaum falls squarely within a class of individuals

targeted by the Bank Secrecy Act—*i.e.*, Americans who avoid their tax

obligations by holding income or assets in undisclosed foreign bank

---

[10] Indeed, the administrative record reveals that among the accounts for which the applicable June 30 balances were unknown, the UMB account he failed to report for 2007 and 2008 had a maximum balance of $672,185 during each of those years, and the Bank Linth, BSI, and St. Galler accounts he failed to report for 2008 and 2009 each had a maximum balance between $2.6 million and $4.3 million during those years.  (*See* Doc. 152, Ex. 1 at 1.4–1.8.)

accounts.  Both when Congress enacted the Bank Secrecy Act in 1970 and when it increased the FBAR penalties in 2004, one of its objects was to combat tax avoidance using offshore bank accounts.  *See* H.R. Rep. No. 91-975, at 12-13 (1970), *reprinted in* 1970 U.S.C.C.A.N. at 4397–98; S. Rep. No. 108-192, at 108 (2003).  That is precisely the activity in which Schwarzbaum engaged.

Although Schwarzbaum seeks to downplay the seriousness of his actions and the harm he caused (Br. 38–41), those factors too weigh against a finding of excessiveness.  When it enacted the Bank Secrecy Act, Congress recognized that "secret foreign bank accounts" had enabled the proliferation of crime, including tax evasion, securities violations, and fraud, H.R. Rep. No. 91-975, at 12, *reprinted in* 1970 U.S.C.C.A.N. at 4397–98, and when it increased the maximum civil FBAR penalty, Congress found that improving compliance was "vitally important," S. Rep. No. 108-192, at 108.  Indeed, the Senate Finance Committee issued a report less than a month ago calling on the IRS and DOJ to "*increase* oversight and enforcement of FBAR violations, focusing on violations by high-net worth individuals." *Credit Suisse's Role in U.S. Tax Evasion Schemes: A Democratic Staff Investigation* 37

(Mar. 29, 2023) (emphasis added), https://www.finance.senate.gov/
download/sfc-credit-suisse-report-final-32923.[11]

In addition, this Court has already held that Schwarzbaum acted
willfully, 24 F.3d at 1362–63—which means that his actions fall into the
more serious category of FBAR violations. Schwarzbaum improperly
attempts to relitigate that issue and recast his violations as
"unwitting." (Br. 40–41.) But there can be no question that his willful
failures to disclose his foreign accounts "reduced public revenues,"
*Bussell*, 699 F. App'x at 696, and harmed the integrity of the tax
system. Schwarzbaum's assertions that his conduct is less culpable
than others' conduct and his complaints about the total amount of his
penalties (which are a function of the balances in the accounts he
willfully failed to report) do not make the penalties unconstitutionally
excessive. *See, e.g.*, *Yates*, 21 F.4th at 1315 (rejecting defendant's
efforts "to diminish the gravity of its violations," where Court had
already held that violations were reckless and material).

---

[11] The report also notes that the "largest FBAR penalties paid to
date by individuals are believed to be [a] $100-million FBAR penalty . . .
and [an] $83-million FBAR penalty," *id.* at 4, which suggests that the
size of Schwarzbaum's penalties is not as exceptional as he claims.

-60-

Finally, Schwarzbaum's penalties are not excessive when compared with the potential criminal sanctions for his actions. Those sanctions include *imprisonment of up to five years* in addition to a fine of up to $250,000 for an FBAR offense standing alone (and double that if there are other violations or a pattern of illegal activity). 31 U.S.C. § 5322(a)-(b). That is much more serious than the maximum civil penalty permitted by § 5321(a)(5)(C), especially since Congress provided that the maximum civil penalty may be imposed *in addition to* the criminal sanctions, 31 U.S.C. § 5321(d). All of the *Bajakajian* factors therefore weigh heavily against Schwarzbaum's contention that the penalties assessed against him are "excessive" within the meaning of the Eighth Amendment.[12]

---

[12] If the Court were to agree with Schwarzbaum, however, that his FBAR penalties are both "fines" and "excessive," in violation of the Eighth Amendment, then the appropriate remedy would be a remand for the penalties to be reduced to a non-excessive amount. In that event, it would be helpful for this Court to provide guidance as to how far below the maximum established by Congress the penalties must depart to avoid being excessive.

# CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

DAVID A. HUBBERT
  *Deputy Assistant Attorney General*

s/ Clint A. Carpenter
FRANCESCA UGOLINI   (202) 514-3361
BRUCE R. ELLISEN   (202) 514-2929
CLINT A. CARPENTER   (202) 514-4346
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*
  *Appellate.TaxCivil@usdoj.gov*
  *Clint.A.Carpenter@usdoj.gov*

*Of Counsel:*
MARKENZY LAPOINTE
  *United States Attorney*

APRIL 2023

-62-

# CERTIFICATE OF COMPLIANCE

### With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**1. Type-Volume**

[X]    This document complies with the word limit of FRAP 32(a)(7)(B) because, excluding the parts of the document exempted by FRAP 32(f), this document contains 12,275 words.

**or**

[ ]    This brief complies with the line limit of FRAP ____ because, excluding the parts of the brief exempted by FRAP 32(f) and ____, this brief uses a monospaced typeface and contains ____ lines of text.

**2. Typeface and Type-Style**

[X]    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

(s)   _s/ Clint A. Carpenter_

Attorney for _Appellee_

Dated:  _April 19, 2023_