_____
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

Case No.: 22-14058-CC

_____

UNITED STATES OF AMERICA,

Appellee

v.

ISAC SCHWARZBAUM,

Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

## REPLY BRIEF OF APPELLANT

Chad M. Vanderhoef                  William M. Sharp, Sr.
Stacy D. Blank                      Holland & Knight LLP
Holland & Knight LLP                1180 W. Peachtree Street NW,
100 N. Tampa Street, Suite 4100     Suite 1800
Tampa, FL 33602                     Atlanta, GA 30309
(813) 227-8500                      (404) 817-8409

_____
_____

*United States of America v. Isac Schwarzbaum*

*Case No.: 22-14058-CC*

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Blank, Stacy D. – appellate counsel for Isac Schwarzbaum

Bloom, Hon. Beth – United States District Court Judge

Carpenter, Clint A. – appellate counsel for United States of America

Casal, Jose A. – trial counsel for Isac Schwarzbaum

Darling de Cortes, Andrea – trial counsel for Isac Schwarzbaum

Dawson, James P. – appellate counsel for Isac Schwarzbaum

Elliott, Nicole M. – trial counsel for Isac Schwarzbaum

Holland & Knight LLP – trial and appellate counsel for Isac Schwarzbaum

Nasta, John P. – trial counsel for United States of America

Nunez, Jeffrey N. – trial counsel for United States of America

Schwarzbaum, Isac – defendant/appellant

Sharp, William M., Sr. – appellate counsel for Isac Schwarzbaum

Small, Daniel I. – trial counsel for Isac Schwarzbaum

Smith, Mary Elizabeth – trial counsel for United States of America

United States of America – plaintiff/appellee

Vanderhoef, Chad M. – appellate counsel for Isac Schwarzbaum

Wilcove, Michael N. – trial counsel for United States of America

*United States of America v. Isac Schwarzbaum*

*Case No.: 22-14058-CC*

Zuckerman, Richard E., Principal Deputy Assistant Attorney General, Tax Division, U.S. Department of Justice – counsel for United States of America

## <u>TABLE OF CONTENTS</u>

**Page**

CERTIFICATE OF INTERESTED PERSONS AND

CORPORATE DISCLOSURE STATEMENT ............................................ C-1 of 2

TABLE OF CONTENTS ............................................................................i

TABLE OF AUTHORITIES ..................................................................... ii

I.    The District Court Once Again Entered a Judgment for
      Unlawful FBAR Penalties .............................................................1

   a.    The Penalties Are Contrary to the FBAR Penalty Statute ...................2

   b.    The District Court Set Aside the Only Timely Assessments
         and Any Other Assessment is Time-Barred.........................................6

      i.    The Assessment Includes the Calculation of a Penalty ..................7

      ii.   The Assessment of a Penalty is Distinct From the Decision
            to Impose a Penalty ........................................................8

      iii.  Courts Use Definitions From Tax Rules and Regulations
            for FBAR Purposes ........................................................9

II.   The District Court's Decision to Retain Jurisdiction Was
      Improper .......................................................................12

III.  The FBAR Penalties are Unconstitutionally Excessive Fines .................17

CONCLUSION ....................................................................20

CERTIFICATE OF RULE 32(a)(7)(B) COMPLIANCE......................................22

CERTIFICATE OF SERVICE .............................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
   988 F.2d 146 (D.C. Cir 1993)..............................................................16

*Bubble Room, Inc. v. United States*,
   159 F.3d 553 (Fed. Cir. 1998) .............................................................11

*Bugge v. United States*,
   99 F.3d 740 (5th Cir. 1996) ...................................................................7

*Catlin v. United States*,
   324 U.S. 229 (1945)..............................................................................14

*Druid Hills Civic Ass'n, Inc. v. Fed. Highway Admin.*,
   833 F.2d 1545 (11th Cir. 1987) ...............................................13, 14, 15

*Helvering v. Mitchell*,
   303 U.S. 391 (1938).........................................................................17, 18

*Kimble v. United States*,
   991 F.3d 1238 (Fed. Cir. 2021) ............................................................11

*McNichols v. Comm'r*,
   13 F.3d 432 (1st Cir. 1993)...................................................................17

*Direct Mktg. Ass'n v. Brohl*,
   575 U.S. 1 (2015)....................................................................................7

*Nat'l Fed. Of Ind. Business v. Sebelius*,
   567 U.S. 519 (2012).................................................................................8

*Polselli v. IRS*,
   598 U.S. __ (May 18, 2023) ...............................................................8, 9

*Taylor v. Heckler*,
   778 F.2d 674 (11th Cir. 1985) .................................................13, 14, 15

*Texas v. United States*,
   523 U.S. 296 (1998)...............................................................................13

ii

*Tyler v. Hennepin Cty.*,
    26 F.4th 789 (8th Cir.) ......................................................................19

*Tyler v. Hennepin Cty.*,
    598 U.S. __, No. 22-166 (2023) .......................................................19

*United Mine Workers, Int'l Union v. Mine Safety & Health Admin.*,
    928 F.2d 1200 ...................................................................................16

*United States v. Bittner*,
    19 F.4th 734 (5th Cir. 2021) .......................................................10, 11

*United States v. Galletti*,
    541 U.S. 114 (2004)...........................................................................8, 9

*United States v. McBride*,
    908 F.Supp.2d 1186 (D. Utah 2012).................................................11

*United States v. NEC Corp.*,
    11 F.3d 136 (11th Cir. 1993) ............................................................19

*United States v. Rum*,
    995 F.3d 882 (11th Cir. 2021) ..........................................................11

*United States v. Schwarzbaum (Schwarzbaum I)*,
    24 F.4th 1355 (11th Cir. 2022) ..........................................................5

*United States v. Toth*,
    33 F.4th 1 (1st Cir. 2022)....................................................17, 18, 19

**Statutes**

26 U.S.C. § 6671(a) ....................................................................................8

31 U.S.C. §§ 5321(a)(5)(C)(i) and (D)(ii) ................................................4

31 U.S.C. § 5321(a)(5)(C)-(D) ...............................................................4, 5

31 U.S.C. § 5321(b)(1)..........................................................................4, 5, 9

31 U.S.C. § 5321(b)(2)..........................................................................4, 5

Bank Secrecy Act ........................................................................................6

BSA ...................................................................................................10, 11, 12

Equal Access to Justice Act ....................................................................14

**Other Authorities**

31 C.F.R. § 1010.306(c).............................................................................4

## **ARGUMENT IN REPLY**

The United States' Answer Brief is a series of misstatements and unconvincing arguments likely intended to divert this Court's attention away from the big picture—the "recalculated" FBAR penalties are legally deficient for multiple reasons and cannot stand.  First, the district court entered judgment against Mr. Schwarzbaum for the *exact* same penalties it already determined to be unlawful because they were not calculated based on June 30 account balances.  Second, after the district court set aside the illegal assessments, any properly calculated assessment would be time-barred under the applicable six-year statute of limitations.  Next, the district court improperly retained jurisdiction during remand in clear contravention of this Court's mandate and administrative law doctrines.  Lastly, notwithstanding the serious legal infirmities that plague the "recalculation," the FBAR penalties assessed against Mr. Schwarzbaum violate the Eighth Amendment's Excessive Fines Clause.  This Court should reject the United States' transparent attempts to distract it from the overarching problem in this case: the government is still seeking to collect unconstitutional and unlawfully calculated FBAR penalties.

## I.     The District Court Once Again Entered a Judgment for Unlawful FBAR Penalties

The United States baselessly characterizes Mr. Schwarzbaum's appellate arguments as "unserious."  Brief for Appellee at 37.  In fact, nothing is more serious to Mr. Schwarzbaum than being forced to litigate this case for nearly five years

because the United States is incapable or unwilling to follow Congress' instructions for calculating an FBAR penalty—neither of which is acceptable. The only "unserious" parts of this appeal are the clumsy misrepresentations used by the United States to mask its inability to present meritorious arguments in this appeal. Indeed, the United States' curious decision to seek exactly the same amount of penalties, rather than the higher amount the IRS purported to recalculate on remand, reflects the government's own recognition that its demand for a different penalty amount would be an indefensible new assessment. Of course, the government's decision to seek the same penalty is equally indefensible because that penalty calculation suffers from the same defects as the prior penalty assessments which were set aside by the district court. The government's opinion about Mr. Schwarzbaum's arguments does not change the fact that the district court has once again entered judgment for unlawful FBAR penalties in favor of the United States.

### a.    The Penalties Are Contrary to the FBAR Penalty Statute

Congress provided a specific rule for calculating FBAR penalties—the penalties must be calculated using account balances on a specific date (*i.e.*, the date of the violation). The IRS failed to follow the rule when making the original assessments against Mr. Schwarzbaum. As a result, the district court set aside those flawed original assessments. Now, after remand, Mr. Schwarzbaum is back where he started—appealing the exact same penalties for the exact same reasons those

penalties were previously rejected for not complying with the FBAR penalty statute. The United States maintains its decision to completely abandon the IRS's purported recalculations to pursue a lesser amount (even though that lower calculation was previously rejected) is simply its litigating position. That may be true, but that litigating position is not grounded in generosity as the government would have this Court believe. Instead, the United States likely decided to pursue the same penalty amounts previously set aside by the district court as unlawful in an attempt to avoid defending a new assessment of a properly calculated penalty it knows is time-barred. But no FBAR collection action can be commenced absent an assessment. The plain language of the FBAR penalty statute is unambiguous—any civil action initiated by the United States must be premised on an assessment. Any assessment issued by the IRS on remand is time-barred. The government's ruse – issuing a new assessment in exactly the same amount as the prior defective one – does does nothing to disguise its statute of limitations problem. Moreover, the new penalty assessment violates the FBAR statute for the same reasons the prior assessment was set aside as unlawful.

The FBAR penalty structure authorized by Congress is simple, despite the United States' frequent missteps. The Secretary of the Treasury is permitted to impose a civil penalty for a violation of the FBAR reporting rules. 31 U.S.C. § 5321(a)(5)(A). The statutory penalty for a willful violation is the greater of $100,000

or 50 percent of the balance in the account(s) as of the date of the violation. 31 U.S.C. § 5321(a)(5)(C)-(D), which at all times relevant to the instant matter was June 30 of the year following the reporting year (*e.g.*, the relevant date for calculating a 2008 penalty would be June 30, 2009). *See* 31 U.S.C. §§ 5321(a)(5)(C)(i) and (D)(ii); 31 C.F.R. § 1010.306(c); (R-92-12, 24-25).

Once the United States has made the decision to impose an FBAR penalty, it must assess that penalty within six years of the violation. 31 U.S.C. § 5321(b)(1) ("[t]he Secretary of the Treasury may ***assess*** a civil penalty … at any time before the end of the 6-year period beginning on the date of the transaction[1] with respect to which the penalty is assessed.") (Emphasis added). And only after the FBAR penalty has been assessed can the United States sue to collect. 31 U.S.C. § 5321(b)(2) ("[t]he Secretary may commence a civil action ***to recover a civil penalty assessed*** under subsection (a) at any time before the end of the 2-year period beginning on the later of the date the penalty weas assessed; or the date any judgment becomes final [in a criminal FBAR action with respect to the same violation].") (Emphasis added).

In summary, the United States simply needs to follow an elementary process to impose, assess, and collect a civil FBAR penalty:

---

[1] The date of the transaction for purposes of filing FBARs is the date on which the reports are due, which was June 30 for the years at issue.

- Make a determination to impose a civil FBAR penalty for a reporting violation (Section 5321(a)(5)(A))

- If the reporting violation is willful, calculate the penalty using June 30 account balances (Sections 5321(a)(5)(C)-(D))

- Assess the properly calculated penalty within six years from the date of the violation (Section 5321(b)(1))

- File a collection action within two years to reduce the assessment to judgment (Section 5321(b)(2))

Here, the IRS made a determination to impose a willful FBAR penalty against Mr. Schwarzbaum. The agency then calculated penalties, but it failed to use June 30 balances. The IRS assessed those faulty penalties against Mr. Schwarzbaum. (R-92-2, 14, 25). Finally, the United States filed an action to reduce the penalty assessments to judgment. Brief for Appellee at 50; ECF No. 1 at 17-18 (United States request for court to "enter judgment against Isac Schwarzbaum … for the FBAR penalties assessed against him for calendar years 2006 through 2009 ….).

The district court held that the United States failed to follow the simple FBAR penalty procedure because the assessed penalties were not calculated using June 30 balances. As a result, the district court set aside the penalty assessments. (R-92-25; R-98-1-2). This Court then rejected the district court's *sua sponte* penalty recalculation and assessment and remanded the case to the district court with instructions to remand to the IRS. *United States v. Schwarzbaum (Schwarzbaum I)*, 24 F.4th 1355 (11th Cir. 2022). In addition, this Court, in *Schwarzbaum I,* held that failure to use June 30 balances was not harmless error. *Id.* Even though the IRS, on

remand, purported to undertake a recalculation based on Mr. Schwarzbaum's June 30 balances, the United States promptly ignored the recalculated amount and moved for entry of judgment of the same improperly calculated amounts originally sought in the complaint. The district court granted the United States' motion and entered judgment for the identical amount previously found unlawful under the FBAR penalty statute. Like the illegal assessments previously set aside, the district court's judgment after remand must also be vacated for contradicting the applicable law. To hold that the previously rejected amount is now acceptable would expressly conflict with this Court's prior ruling that the defective penalty assessments were not harmless error.

> ### b.  The District Court Set Aside the Only Timely Assessments and Any Other Assessment is Time-Barred

The assessment is the foundation upon which FBAR cases are built and any assessment must be timely to be enforced. Thus, it is important to understand what is meant by assessment and its specific meaning. This case arises out of an action initiated by the United States to collect an assessment made by the IRS. The IRS was delegated authority by the Financial Crimes Enforcement Network (FinCEN) to "assess and collect civil penalties" pursuant to the FBAR reporting rules. *See* Memorandum of Agreement and Delegation of Authority for Enforcement of FBAR Requirements (Apr. 2, 2003). Because the IRS is the agency tasked with assessing FBAR penalties, and the Bank Secrecy Act ("BSA") does not define assessment,

legal precedent and basic logic dictate that the definition of assessment applicable to the IRS is appropriate for FBAR purposes.    The IRS's original assessments may have been timely, but those assessments were set aside by the district court, rendering those assessments a nullity.  (R-92-25; R-98-1-2).  An abatement, which, essentially, is the IRS's decision to voluntarily set aside an assessment "wipe[s] out the assessment." *Bugge v. United States*, 99 F.3d 740, 744 (5th Cir. 1996).  If the government reverses course after the abatement, it must make a new assessment within the relevant statutory limitations period.  *Id.*  The United States Supreme Court's definition of assessment makes it clear that any recalculation is a new assessment that is time-barred under the applicable statute of limitations.  The government cannot, as a matter of law, make a recalculation of the amount owed without issuing a new assessment.  The United States most likely recognized that stark reality and elected not to seek collection of the IRS's remand calculations as a result.

### i.    The Assessment Includes the Calculation of a Penalty

The United States Supreme Court has clearly defined the term "assessment." "Assessment … refers to the official recording of a taxpayer's liability," *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 9 (2015), and is "understood more broadly to **encompass the process by which that amount is calculated.**"  *Id.* (Emphasis added). The Supreme Court has further articulated that assessment refers to the *amount* of

the liability—not the person on whom a penalty was assessed. *See United States v. Galletti*, 541 U.S. 114, 115 (2004) (Supreme Court declaring "it is the *tax* that is assessed, not the taxpayer.") (Emphasis in original).

Assessments apply equally to penalties and are not exclusive to taxes. *See* 26 U.S.C. § 6671(a) ("The penalties and liabilities provided by this subchapter shall be paid upon notice and demand by the Secretary, and shall be assessed and collected in the same manner as taxes."); *see also Nat'l Fed. Of Ind. Business v. Sebelius*, 567 U.S. 519, 546 (2012) ("Section 6201(a) authorizes the Secretary to make 'assessments of all taxes (including interest, additional amounts, additions to tax, and *assessable penalties*).'" (Emphasis in original).

### ii.    The Assessment of a Penalty is Distinct From the Decision to Impose a Penalty

As important as it is to understand what an assessment is, it is equally important to understand what it is not. The FBAR penalty statutes are clear—the agency's determination that a penalty should be imposed is separate and distinct from the assessment of that penalty. Section 5321(a)(5) provides authorization to impose an FBAR penalty, while Section 5321(b) provides a six-year window to assess the penalty. The plain language of the statute—and Congress' choice of words—reflects a clear distinction between a determination and assessment of a penalty. Courts must "give effect to every clause and word of a statute." *Polselli v.*

*IRS*, 598 U.S. __ (May 18, 2023) (quoting *Microsoft Corp. v. i4i L.P.*, 564 U.S. 91, 106 (2011)).  The Supreme Court recently confirmed the distinction between the determination that a liability exists and the assessment that refers to the calculation and recording of the liability.  *Id.* (Refusing to read an additional unwritten condition into the summons notice exception because the first clause of the statute at issue referred to assessments and the second clause addressed determination of a liability, which are two separate constructs).

Section 5321(a)(5) authorizes the IRS to *impose* an FBAR penalty.  Section 5321(b)(1) mandates that any *assessment* of that penalty must occur within six years from the date of the violation.  Congress' word choice matters.  Like the Supreme Court in *Polselli*, this Court should conclude that i) the district court set aside the original assessments as unlawful, ii) assessments cannot exist separate from the penalty calculations they seek to impose, and iii) therefore any attempt to impose recalculated FBAR penalties constitutes an untimely assessment.

### iii.    Courts Use Definitions From Tax Rules and Regulations for FBAR Purposes

The United States complains in its brief that the *Galletti* and *Direct Mktg.* cases defined the term "assessment" in the tax context and that definition should not apply to FBARs.  That argument fails for two reasons.  First, where the FBAR rules fail to define terms, other courts have turned to tax rules and regulations to define

terms for FBAR purposes. Second, taxpayer responses on income tax returns have been used to support penalties for FBAR reporting mistakes.

The Fifth Circuit, in a notable FBAR case, recently applied the definition of "reasonable cause" found in the federal tax regulations because the BSA does not define the term. In *United States v. Bittner*, 19 F.4th 734 (5th Cir. 2021), the court analyzed the reasonable cause exception to FBAR penalties. Because the BSA does not define reasonable cause, the court looked to the Internal Revenue Code and federal tax regulations and recognized that "most, if not all, courts to address a claim of reasonable cause under [the FBAR rules] have consulted the IRC for guidance." *Id.* at 740, n.3. The court concluded that reasonable cause for FBAR purposes was the same as for tax purposes. *Id.* at 741(citing numerous sections of the Internal Revenue Code and income tax regulations to define reasonable cause). Basic statutory interpretation principles guided the court and supported its reasoning. First, the Fifth Circuit acknowledged that reasonable cause is a term of art and that "when a statute uses such a term, Congress intended it to have its established meaning." *Id.* at 740 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 342 (1991)). Second, the Fifth Circuit relied on the presumption of consistent usage in using tax statutes and regulations to define reasonable cause because "a term generally means the same thing each time it is used[,]" *Id.* at 741 (quoting *United States v. Castleman*, 572 U.S. 157, 174 (2014) (Scalia, J., concurring)), especially

10

"when Congress uses the same language in two statutes having similar purposes." *Id.* (Quoting *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion). The court understood that the reasonable cause exceptions found in the BSA and IRC serve the same purpose—avoiding penalties for a violation of federal law. *Id.*

This Court should apply the same reasoning as the Fifth Circuit in *Bittner* and look to the tax usage to define "assessment." "Assessment" is a term of art, *Bubble Room, Inc. v. United States*, 159 F.3d 553, 565 n.15 (Fed. Cir. 1998), and it is undefined by the BSA. Further, the term "assessment" serves a similar purpose for tax and FBAR purposes—in each instance, it refers to an amount the United States believes it is owed and is trying to collect, *i.e.*, tax penalties and FBAR penalties.

The FBAR's connection to the tax system is not limited to case law definitions. Several courts have concluded individuals willfully violated the FBAR reporting rules, in part, because of how their income tax returns were filled out. *See, e.g.*, *United States v. Rum*, 995 F.3d 882, 891 (11th Cir. 2021) ("Rum filed numerous years of tax returns on which he answered "no" to the question of whether he had an interest in a foreign bank account); *United States v. McBride*, 908 F.Supp.2d 1186, 1211 (D. Utah 2012) (stating that risk of failing to disclose foreign accounts is obvious because of a question on Schedule B of federal income tax return); *Kimble v. United States*, 991 F.3d 1238, 1243 (Fed. Cir. 2021) (imputing constructive

knowledge of FBAR requirement because of a question on Schedule B of federal income tax return).

This Court should adopt, for purposes of this case, the Supreme Court's definition of assessment. That the Supreme Court defined the term in the tax context is a distinction without a difference here. The IRS (i.e., the highest tax authority in the United States) was delegated exclusive FBAR enforcement authority. The BSA and IRC assessment statutes serve a common purpose—recording a liability to initiate collection efforts. The consistent usage principle dictates that "assessment" means the same thing each time it is used. In this case, the term assessment means that a penalty recalculation results in a new assessment. In this case, the new assessment occasioned by the penalty recalculation is far beyond the six-year limitations period for the assessment of FBAR penalties. The original FBAR assessments were set aside by the district court and any new assessments are time-barred.

Even if the United States somehow were permitted to make a new calculation under the umbrella of the original assessment, the new calculation fails as a matter of law for the same reasons the original calculation failed.

## II.    The District Court's Decision to Retain Jurisdiction Was Improper

The United States, in its answer, incredibly asserts that Mr. Schwarzbaum should have argued the district court improperly retained jurisdiction before the

district court actually did so. The issue was not yet ripe. *Texas v. United States*, 523 U.S. 296 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (Internal quotes omitted). The district court's decision to retain jurisdiction was speculative event that could not have been known during the first appeal. The United States argument is meritless and should be summarily rejected by this Court.

After arguing Mr. Schwarzbaum should have been clairvoyant, the United States relies on inapposite case law to contend that agency remands are not final actions and the district court's decision to retain jurisdiction was proper. But neither *Taylor v. Heckler*, 778 F.2d 674 (11th Cir. 1985) nor *Druid Hills Civic Ass'n, Inc. v. Fed. Highway Admin.*, 833 F.2d 1545 (11th Cir. 1987) supports the government's argument.

In *Taylor*, the Secretary of Health and Human Services' decision to deny social security disability benefits could not be supported by evidence in the administrative record. *Taylor*, 778 F.2d at 675. The district court then remanded the case back to the agency for further evidentiary proceedings. Importantly, the agency's action, although initially rejected by the court, was not vacated and the case was not concluded. After remand, the agency was still compelled to act—*i.e.*, provide better evidence to support its decision to deny disability benefits or award the requested benefits. The agency could not remain silent and the court

13

acknowledged as much. "[T]he 'district court's remand … does not end this litigation' because the Secretary may thereafter grant or deny benefits to the claimant … and, if the Secretary denies benefits, the claimant may obtain subsequent judicial review." *Id.* at 677 (citing *Howell v. Schweiker*, 699 F.2d 524, 526 (11th Cir. 1983).

The issue in *Taylor* was whether the district court's decision to remand for further evidentiary proceedings was a final decision for purposes of awarding attorney's fees under the Equal Access to Justice Act. The United States Supreme Court has spoken on that question and the answer was clear. "A final decision generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment. *Catlin v. United States*, 324 U.S. 229, 233 (1945) (internal quotes omitted). This Court has concluded that remands to the Department of Health and Human Services are interlocutory orders when the agency must reach a final, supportable ruling to grant or deny disability benefits. In contrast, the instant case was decided on the merits and the IRS assessments were set aside as unlawful. The IRS was under no obligation to issue new assessments and, indeed, the statute of limitations prohibited it from doing so. This case, with its different posture, cannot be shoehorned to fit *Taylor* as a matter of governmental convenience.

The United States' reliance on *Druid Hills* fares no better. This Court expressly acknowledged there was no material difference between *Druid Hills* and *Taylor*. *Druid Hills*, 833 F.2d at 1549 ("[t]he only difference between *Taylor* and

this case is that the district court remanded the case to the Secretary of Transportation because the Eleventh Circuit ordered it to do so.  This is a distinction without a difference.").  Administrative law is not a "one-size-fits-all" regime—the proper remedy in one case may be impractical and wrong in another case, based on different facts.  Such is the case here.  In *Druid Hills*, much like *Taylor*, the initial agency action was not supported by the administrative record.  The agency action ***was not vacated***, but the matter was remanded to the agency for additional findings that were adequate to support its determination that a proposed highway did not violate applicable environmental rules.

Reliance on case law where the agency action, although flawed, was not vacated misses the mark and should be rejected by this Court.  Doing otherwise ignores the dramatically different facts of this case.  In this case, unlike *Taylor* and *Druid Hills*, there was a final judicial decision by the district court setting aside the agency action.  Neither case supports treatment of the judgment in this case as anything other than a final order vacating the assessments.  In stark contrast to the vacated assessments in this case, the flawed agency actions in *Taylor* and *Druid Hills* were left intact and remand was ordered for the agencies to make additional findings.

Finally, the United States misstates the standard for remand without vacatur to argue its position that the IRS is entitled to make arbitrary assessments, and once those unlawful assessments are set aside, the agency can recalculate penalties *ad*

*infinitum*.  The government argues in its brief that remand without vacatur is appropriate where the agency's action can be cured.  Brief for Appellee at 16.  That simply is not the standard.  Remand without vacatur is appropriate only in limited circumstances—namely, the seriousness of the order's deficiencies and the disruptive consequences of an interim change.  *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir 1993) (emphasis added).  In *Allied-Signal*, the court concluded that the Nuclear Regulatory Commission failed to justify why similarly situated licensees were treated differently with respect to certain user fees.  The court reasoned that setting aside the inadequately supported action during remand makes little sense if the agency can provide a proper foundation for its action.  *Allied-Signal*, 988 F.2d at 151 ("[i]t is conceivable that the Commission … may develop a reasoned explanation based on an alternative justification" for its action); see also, *United Mine Workers, Int'l Union v. Mine Safety & Health Admin.*, 928 F.2d 1200, 1203 (concluding that the agency's lack of reasoned decision-making did not require vacatur because the "deficiencies in the Assistant Secretary's order appear to go to the adequacy of his stated explanation, rather than the merits of the decision itself.").  That situation simply is not present in this case.  No reasoned explanation could rescue unlawful assessments that had already been set aside by the district court.

## III.    The FBAR Penalties are Unconstitutionally Excessive Fines

Finally, even if the vacated assessments have somehow been revived by the government's decision to seek the same penalty amounts, the penalties at issue—nearly $18 million—cannot rationally be considered anything other than unconstitutionally excessive.  The tax penalties relied upon by the United States illustrate the excessive and disproportionate nature of the FBAR penalties and only support Mr. Schwarzbaum's argument.

The United States, in its answer brief, encourages this Court to rely on the First Circuit's opinion in *United States v. Toth*, 33 F.4th 1 (1st Cir. 2022), and hold that FBAR penalties are not subject to Eighth Amendment review.   Brief for Appellee at 40.  The First Circuit, however, incorrectly analogized FBAR penalties to civil tax penalties and cited a number of cases supporting that comparison, one of which was just reversed by the United States Supreme Court. *Id.* at 17.  Further, the First Circuit premised its ruling on the conclusion that investigatory costs and tax loss render the penalty remedial. *Id.* at 16-17. That premise falls flat here.  Mr. Schwarzbaum voluntarily disclosed his FBAR errors and paid the associated tax (plus interest and accuracy-related penalties).  This Court should reject the First Circuit's faulty reasoning and hold that FBAR penalties approaching $18 million are excessive, and therefore, unconstitutional.

The First Circuit relied, in large part, on two tax cases—*Helvering v. Mitchell*, 303 U.S. 391 (1938) and *McNichols v. Comm'r*, 13 F.3d 432 (1st Cir. 1993)—to conclude that because FBAR and civil tax penalties are analogous and the latter are not subject to Eighth Amendment review, then FBAR penalties should likewise be exempt. A simple example quickly demonstrates the fallacy of that conclusion. The magnitude of an FBAR penalty reveals quite clearly that the statute is punitive rather than remedial. The amount of the FBAR penalty is untethered to any consideration of the investigatory costs or tax losses incurred by the government. In *Helvering*, the taxpayer's income tax deficiency was $728,709.84. *Helvering*, 303 U.S. at 396. Because of the taxpayer's fraudulent conduct, a 50% addition to tax was assessed in the amount of $364,354.92. *Id.* In contrast, Mr. Schwarzbaum's income tax deficiency in 2007 was $128,227 (R-35.25-2), and the assessed FBAR penalty for 2007 was $4,185,271. (R-152.5-6). Consequently, the FBAR penalty assessed against Mr. Schwarzbaum was 3,264% of the income tax deficiency for the year, dwarfing the 50% penalty upheld in *Helvering*. To further illustrate the incomparable nature of the tax penalties in *Helvering*, if Mr. Schwarzbaum had been assessed the same 50% penalty on the income tax deficiency, his penalty would have been a mere $64,113.50. The 2007 penalty is not an outlier. The 2008 and 2009 penalty assessments are identical. *Id.* at 4-5. A basic math comparison quickly

undermines the First Circuit's reliance on *Helvering*.  The Supreme Court recently rejected another case on which the court based its ruling in *Toth*.

The court in *Toth* cited *Tyler v. Hennepin Cty.*, 26 F.4th 789 (8th Cir.) to support its ruling that civil FBAR penalties escape Eighth Amendment review.  *Toth*, 33 F.4th at 17 ("The Excessive Fines Clause is not implicated, since the addition to the taxes owed is not a punitive measure.").  The Supreme Court reversed the Eighth Circuit on other grounds, but nevertheless took issue with its excessive fines analysis.  *Tyler v. Hennepin Cty.*, 598 U.S. __, No. 22-166 (2023) (Gorsuch, J., concurring) (stating that even a "cursory review" of the lower court's excessive fines analysis contains mistakes that other courts "should not be quick to emulate").  The Excessive Fines Clause "applies to any statutory scheme that serves *in part* to punish[,]" even to statutes with a "predominantly remedial purpose."  *Id.* (Emphasis in original) (internal quotes omitted).  Statutes that serve any goal of punishment, such as deterrence are punitive.  *Id.*

Here, the district court agreed that the FBAR penalty statute "undoubtedly promotes deterrence." (R-98-15).  The admitted existence of that deterrent purpose confirms that FBAR penalties are fines subject to Eighth Amendment review under Supreme Court jurisprudence.  Moreover, the stated purpose of FBAR penalties confirms that they are penal in nature.  *See United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) ("A remedial action is one that compensates an individual for

a specific harm suffered, while a penal action imposes damages upon the defendant for a general wrong to the public.").   The IRS's own guidebook—the Internal Revenue Manual—instructs that FBAR penalties "should be determined to promote compliance with the FBAR reporting and recordkeeping requirements."   IRM 4.26.16.6 (11-06-2015).  This Court should reject the district court's flawed analysis on this point.  FBAR penalties serve a deterrent purpose; thus, they are fines for purposes of the Eighth Amendment.

## CONCLUSION

For all the foregoing reasons, this Court should reverse the judgment entered after remand in favor of the United States and remand with instructions that the district court enter judgment in favor of Mr. Schwarzbaum.

Respectfully submitted,

*/s/ Chad M. Vanderhoef*
CHAD M. VANDERHOEF
Florida Bar No. 109595
STACY D. BLANK
Florida Bar No. 772781
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
Tampa, FL 33602
Telephone:  (813) 227-8500
Facsimile:  (813) 229-0134
Chad.Vanderhoef@hklaw.com
Stacy.Blank@hklaw.com

WILLIAM M. SHARP, SR.
Florida Bar No. 341452

20

HOLLAND & KNIGHT LLP
1180 W. Peachtree Street NW, Suite 1800
Atlanta, GA 30309
Telephone:  (404) 817-8409
Facsimile:  (404) 881-0470
William.Sharp@hklaw.com

Counsel for Appellant

## CERTIFICATE OF RULE 32(a)(7)(B) COMPLIANCE

Counsel for appellant Isac Schwarzbaum certifies that this Reply Brief complies with Rule 32(a)(7)(B) and includes 4,720 words as calculated by the word processing program.

*/s/ Chad M. Vanderhoef*
Attorney


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 9, 2023, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on counsel of record identified via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Chad M. Vanderhoef*
Attorney